*In re* St. Clair Clement.—(The People *ex rel.* The Department of Mental Health, Petitioner-Appellee, *v.* St. Clair Clement, Respondent-Appellant.)

(No. 61923;

First District (3rd Division)—December 4, 1975.

James J. Doherty, Public Defender, of Chicago (Anthony Pinelli, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

We are asked to decide whether under Illinois statute the Illinois Department of Mental Health has the authority to change the status of a patient from voluntary to involuntary through commitment proceedings absent a request by the patient to leave the hospital.

Section 5—3 of the Mental Health Code (Ill. Rev. Stat. 1973, ch. 91½, par. 5—3), dealing with procedures for the commitment of a voluntary patient, provides as follows:

> "Each voluntary admittee shall be allowed to leave the hospital within 5 days, excluding Saturdays, Sundays and holidays after he gives any professional staff person written notice of his desire to leave, unless prior to leaving the patient withdraws such notice by written withdrawal, or unless within said five days a petition

and the certificates of two examining physicians, at least one of whom shall be a psychiatrist, are filed with the court, and the court shall order a hearing pursuant to Section 8—8. The patient may continue to be hospitalized pending a final order of the court in the court proceedings.".

The facts in the present case are undisputed. Respondent, St. Clair Clement, was admitted to Chicago Read Mental Health Center as a voluntary patient on January 21, 1975. Thereafter, his condition deteriorated. He had to be placed in restraints almost daily. He struck two patients with a broom handle, hit another patient in the face, and threw a table at another patient. He frequently threatened to harm female staff members.

On April 2, 1975, a clinical review committee met to consider a request to transfer respondent to the Chester Mental Health Center for treatment. Respondent was not present, but was represented by an assistant public defender. After hearing from the witnesses, the committee unanimously recommended the transfer. The committee observed that extensive medication had produced no improvement in respondent, and that respondent would profit from the structured, all-male environment at Chester. The committee noted that respondent was a voluntary patient and, although it was unlikely that he would request to sign a 5-day notice, it was possible.

On April 9, 1975, a petition for commitment was filed by a psychologist employed by the Department who had been present at the above hearing. In addition to setting forth the foregoing facts, the petition was accompanied by certificates signed by two psychiatrists, both of whom had also attended the committee hearing of April 2. The doctors found respondent to be mentally ill, unable to care for himself, to be very hostile and unaware of his misdoings. The certificate recommended that respondent go to "a long standing behavior modification hospital for his treatment."

On April 15, 1975, the hearing on respondent's commitment was held before the trial judge. Respondent's presence was waived, but he was represented by an assistant public defender. Prior to the beginning of the proceedings, respondent's counsel filed a motion to dismiss the petition on the basis that respondent was a voluntary patient. The court denied the motion, finding that there was no reason to dismiss a commitment petition merely because a person is presently in a hospital on a voluntary basis.

At the commitment hearing, the State presented nine witnesses. The witnesses consisted of doctors and employees of the Read Health Center. The employees testified in detail as to respondent's violence and destruc-

tiveness. They described how he had attacked staff members and other patients. The doctors testified that as a result of their examination and respondent's behavior, they believed that he was in need of mental treatment and should be committed to a more structured and less stressful facility. During a court recess, the trial judge personally interviewed the respondent in the ward. After the interview, the judge stated that respondent did not appear to know what was going on and could not make a rational decision concerning an agreed manner of treatment.

The only witness offered by respondent's counsel was Geraldine Lannon, who had also testified for the State. She testified that she was present at the review committee proceedings on April 2 and that the testimony heard during commitment proceedings was substantially the same as given before the review committee.

Both respondent and State then rested. Counsel for respondent moved for an immediate transfer to the Chester facilities without an order of commitment. The trial court, however, found the respondent in need of mental treatment and ordered that he be hospitalized by the Department of Mental Health in the Chester Mental Health Center.

On appeal respondent urges that the change of his status from that of voluntary to involuntary patient through commitment proceedings absent his request to leave the hospital violates his right to due process of law. He argues that his commitment runs in direct conflict with the State's interest to encourage voluntary admission. He further charges that if the Department is permitted to commit a voluntary admittee in violation of the statute, no one would seek admission on a voluntary basis.

The State, on the other hand, maintains that section 5—3 of the Mental Health Code operates as a limitation on a voluntary patient's right to leave the hospital, not as a limitation on a person's right to file a commitment petition. Citing section 8—1 of the Code (Ill. Rev. Stat. 1973, ch. 91½, par. 8—1), it further argues that the Code permits a person to be committed at any time, regardless of the fact that he happens to be a voluntary patient, if grounds for commitment are proved in a court hearing.

We recognize that the evidence was overwhelming that respondent's condition deteriorated severely after he entered the hospital as a voluntary patient. Nevertheless, we believe that his status as a voluntary patient could not be changed without compliance with the statute. Section 5—3 is the only provision of the Illinois Mental Health Code which specifies procedures for the commitment of a voluntary patient. The language of that section is clear, unambiguous, and mandatory, and only becomes operative when a voluntary patient requests that he leave the hospital. The section provides in part: "Each voluntary admittee *shall* be

allowed to leave the hospital within 5 days \* \* \* *after* he gives \* \* \* written notice of his desire to leave \* \* \* *unless* within said five days a petition and the certificates of two examining physicians \* \* \* are filed with the court, and the court shall order a hearing \* \* \*." (Emphasis added.) The statute guarantees a voluntary patient the right to leave the hospital in exchange for any incidental infringement of his personal liberty as a result of voluntary confinement. See *People v. Sansone* (1974), 18 Ill.App.3d 315, 309 N.E.2d 733.

Further support for this interpretation is found in section 5—2 of the Mental Health Code. (Ill. Rev. Stat. 1973, ch. 91½, par. 5—2.) That section provides that the voluntary application form "shall contain in large, bold-face type a statement in simple non-technical terms" that a voluntary patient may leave the hospital within 5 days "after giving a written notice of his desire to leave. This right to leave must be communicated orally to the admittee at the time of his admission, in a language he understands \* \* \*." Such language clearly suggests that the voluntary patient's right to request to leave is the focal point of his voluntary status.

■■ We hold that a voluntary patient under the Code has an unqualified right to request to leave a Department facility at any time. Absent such a request by the patient, the Department may not infringe on this right by the institution of commitment proceedings. Only when the voluntary patient exercises his right and submits a written notice of his desire to leave may the Department exercise its right to file a petition for involuntary commitment.

■■ Respondent was committed in a manner not authorized by statute. He entered the hospital as a voluntary patient, and the subsequent commitment, with its accompanying stigma, deprived him of his right to request to leave without due process.

It should also be noted that the State has not challenged respondent's assertion that the Department had the authority to transfer him to the Chester Mental Health Center without commitment proceedings. (See Ill. Rev. Stat. 1973, ch. 91½, par. 12—4.) Indeed, counsel for respondent made that request at the conclusion of the court hearing. Thus, no authority existed for the Department's actions in initiating the commitment process.

For the reasons stated, the order of the circuit court of Cook County is reversed.

Order reversed.

McGLOON, P. J., and MEJDA, J., concur.