THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEOLA HILL, Defendant-Appellant.

First District (5th Division)    No. 78-1175

Opinion filed May 18, 1979.

Mary M. McCormick, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order finding defendant to be in need of mental treatment and mentally retarded and remanding her to the custody of the Illinois Department of Mental Health (the Department) for hospitalization. The issues presented are (1) whether defendant could properly be subject to involuntary commitment proceedings after she had

voluntarily hospitalized herself in a facility of the Department and before she gave notice of her desire to leave the facility; and (2) in the event the involuntary proceedings were properly brought (a) whether the trial court erred in denying defendant's request for a change of venue and (b) whether the finding that defendant was in need of mental treatment and mentally retarded was supported by clear and convincing evidence.

Defendant was indicted for murder by a Cook County grand jury in March of 1972. After a hearing, she was found unfit to stand trial and was remanded to the Department of Mental Health, which transferred her to the Elgin Mental Health Center in Kane County. On May 23, 1975, a Kane County judge found her to be no longer in need of mental treatment and ordered her released to the custody of the sheriff of Cook County. On November 25, 1975, a petition for release on bail or recognizance was filed in the Circuit Court of Cook County and, after a hearing, bail was set at $1,000. Defendant, unable to raise the bond money, was remanded to Cook County Jail. The State subsequently petitioned for a restoration hearing, and on March 19, 1976, she was found to be still unfit to stand trial and was transferred back to Elgin. On November 23, 1976, a Kane County judge again found defendant to be no longer in need of mental treatment but still unfit to stand trial, and then on November 30, 1976, she was released on her own recognizance by a judge of the Circuit Court of Cook County after the judge had obtained a commitment from the Department that she could return to the Elgin facility as a voluntary patient. Later, the State petitioned in Cook County for another restoration hearing, and on June 28, 1977, a verdict was directed finding that she remained unfit to stand trial. Following this, the State requested a hearing, pursuant to section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2), as to whether she was in need of mental treatment and mentally retarded. Defendant objected, arguing that she could not be subjected to such proceedings while she was a voluntary patient at Elgin unless she gave notice of her desire to leave the facility, in accordance with section 5—3 of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91½, par. 5—3). The court granted the State's request and, after a hearing, the jury found defendant to be in need of mental treatment and mentally retarded. Thereafter, in a separate hearing, defendant was found to be in need of hospitalization, and an order was then entered finding her to be mentally retarded, in need of mental treatment, in need of hospitalization, and remanding her to the custody of the Illinois Department of Mental Health. This appeal is from that order.

OPINION

■■ Defendant initially contends that the trial court had no authority to

submit her to involuntary commitment proceedings while she was a voluntary patient and before she gave notice of her intent to leave the facility under section 5—3 of the Mental Health Code. We agree. We believe this contention is controlled by *In re Clement* (1975), 34 Ill. App. 3d 574, 340 N.E.2d 217. In that case, the patient (Clement) had been voluntarily admitted to Chicago Read Mental Health Center, a minimum-security facility of the Department. His condition deteriorated and, when he became violent, a clinical review committee recommended (after a hearing) that he be transferred to the Chester Mental Health Center, a maximum-security facility. The committee also noted that, although Clement had not given notice of his desire to leave, it was possible that he might seek discharge in the future, and to avoid this a psychologist of the Department of Mental Health filed a petition to have Clement involuntarily committed. Following a hearing, the trial court found Clement to be in need of mental treatment and ordered him hospitalized at the maximum security facility at Chester. On appeal, this court reversed, noting that the only authority by which a voluntary patient may be committed involuntarily was contained in section 5—3 of the Mental Health Code, which provides:

> "Each voluntary admittee shall be allowed to leave the hospital within 5 days, excluding Saturdays, Sundays and holidays after he gives any professional staff person written notice of his desire to leave, unless prior to leaving the patient withdraws such notice by written withdrawal, or unless within said five days a petition and the certificates of two examining physicians, at least one of whom shall be a psychiatrist, are filed with the court, and the court shall order a hearing pursuant to Section 8—8. The patient may continue to be hospitalized pending a final order of the court in the court proceedings." (Ill. Rev. Stat. 1977, ch. 91½, par. 5—3.)

The court then went on to state:

> "[W]e believe that [the patient's] status as a voluntary patient could not be changed without compliance with the statute. Section 5—3 is the only provision of the Illinois Mental Health Code which specifies procedures for the commitment of a voluntary patient. The language of that section is clear, unambiguous, and mandatory, and only becomes operative when a voluntary patient requests that he leave the hospital. * * * The statute guarantees a voluntary patient the right to leave the hospital in exchange for any incidental infringement of his personal liberty as a result of voluntary confinement. [Citation.]
>
> * * *
>
> We hold that a voluntary patient under the Code has an unqualified right to request to leave a Department facility at any

time. Absent such a request by the patient, the Department may not infringe on this right by the institution of commitment proceedings. Only when the voluntary patient exercises his right and submits a written notice of his desire to leave may the Department exercise its right to file a petition for involuntary commitment.

[Clement] was committed in a manner not authorized by statute. He entered the hospital as a voluntary patient, and the subsequent commitment, with its accompanying stigma, deprived him of his right to request to leave without due process." 34 Ill. App. 3d 574, 576-77, 340 N.E.2d 217, 219.

■■ The State, however, argues that *Clement* is factually distinguishable from the case at bar. It points out that Clement was originally admitted to treatment on a voluntary basis, while defendant here was first involuntarily committed and later allowed to commit herself voluntarily, because the trial judge felt that she should not again be placed in Cook County Jail; that Clement was not charged with a crime and was thus entitled to protection from involuntary commitment; whereas, defendant, having been indicted for murder, is not the type of person the legislature intended to so protect; and that while it is good public policy not to discourage individuals such as Clement from seeking voluntary treatment, such considerations do not apply to defendant since she is unable to realize her need for treatment. These arguments, however, do not persuade us that the case at bar is beyond the ambit of *Clement*. It appears to us that the *Clement* court did not base its holding on the facts or policy reasons singled out above by the State; but rather, upon its interpretation of the rights afforded all voluntary patients under section 5—3 of the Mental Health Code. Inasmuch as the State admitted at oral arguments in this court that defendant was a voluntary patient and was thus within the scope of section 5—3, the *Clement* court's interpretation of the statute mandates that defendant could not be subjected to involuntary commitment proceedings until she gave the statutory notice of her desire to leave the facility.

■■ We are not persuaded by the State's suggestion that it was within the trial judge's discretion to allow the involuntary commitment proceedings. As the *Clement* court observed, section 5—3 "*guarantees* a voluntary patient the right to leave the hospital in exchange for any incidental infringement of his personal liberty as a result of voluntary commitment" (emphasis added) (34 Ill. App. 3d 574, 577, 340 N.E.2d 217, 219), and we find nothing in the statute or cases to indicate that this right is in any respect contingent upon judicial discretion.

The State finally urges that, if defendant were hospitalized as an involuntary patient, the court would be advised of her discharge;

whereas, this would not be so if she were to remain on voluntary status. There was testimony that if defendant left the facility, she would probably stop taking her medicine and more than likely become violent. Thus, the State argues that the interests of society would be better served if defendant is on involuntary status so there is some court supervision of her case. We realize that it would certainly be desirable for the court to be automatically apprised should defendant seek to leave Elgin. However, *Clement* holds that section 5—3 has granted defendant protection from involuntary commitment proceedings until she gives the five-day notice of her intent to leave, and it appears to us that the problems suggested by the State that might result if she were to leave could easily be obviated by commencing an involuntary commitment proceeding within that five-day period.

We conclude that the trial court had no authority here to subject defendant to involuntary commitment proceedings while she was a voluntary patient at the Elgin facility of the Department and had not given notice of her desire to leave.

In view of this holding, we have no occasion to consider defendant's other contentions that venue in Cook County was improper and that the trial court's finding was not supported by clear and convincing evidence.

For the reasons stated above, the order of the trial court is reversed.

Reversed.

MEJDA and WILSON, JJ., concur.