*In re* SHERRIE MEYER.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* SHERRIE MEYER, Respondent-Appellant.)—*In re* DONALD WALL.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DONALD WALL, Respondent-Appellant.)

Second District    Nos. 81-766, 81-767 cons.

Opinion filed July 14, 1982.

Gerard Brost and Linda S. Ganski, both of Guardianship & Advocacy Commission, of Springfield, and Fred Firestone, of Guardianship & Advocacy Commission, of Alton, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago, and Eugene Stockton, State's Attorney, of Dixon (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

In these consolidated cases, each respondent appeals from an order finding her or him in need of involuntary commitment. The respondents also contend that the trial court erred in entering an order which required the Illinois Guardianship and Advocacy Commission to pay for the respondents' transcripts.

Both respondents, Donald Wall and Sherrie Meyer, have been long-term residents of the Dixon Developmental Center. Mr. Wall has been a voluntary patient of the center for more that 40 years. Ms. Meyer has been a voluntary patient for more than 15 years.

Mr. Wall is mildly retarded and suffers from numerous physical and psychological disorders. Sometime prior to 1981, he started exhibiting aggressive behavior against the staff and other clients at the center. Because of this behavioral problem, a determination was made to obtain a status of involuntary admission for Mr. Wall.

Sherrie Meyer is also mildly retarded and suffers from other physical and developmental disabilities. In recent years she has become aggressive and self-injurious. Ms. Meyer presently has no appointed guardian. In light of her aggressive and self-destructive behavior, a petition seeking her involuntary admission to the Department of Mental Health was filed.

On August 5, 1981, hearings were held on the petitions, and both parties were found to be subject to involuntary admission. At both of the hearings, there was sufficient evidence to establish that the respondents were mentally retarded and that they were likely to injure themselves and others. It was also established that the change in status from a voluntary admittee to an involuntary committee would not change or alter the treatment given to the respondents. It would merely curtail the respondents' right to seek discharge under section 4—306(a) of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1981, ch. 91½, par. 4—306(a)).

Petitions for rehearing were filed and were denied. Timely notices of appeal were filed. At that time, the respondents requested appointment of an attorney on appeal. On October 8, 1981, the trial court entered an order appointing the Illinois Guardianship and Advocacy Commission to represent the respondents. The court also entered an order requiring the Illinois Guardianship and Advocacy Commission to be responsible for the cost of the transcripts on appeal.

Neither respondent challenges the evidence presented at the trials. There is no contention that the respondents are not mentally retarded, nor is there a contention that the respondents are not dangerous to themselves or others. Rather, it is urged that absent a patient's request to leave the hospital, the change of status from voluntary to involuntary patient through involuntary commitment proceedings is not authorized by statute and violates the patient's right to due process of law.

Section 4—306(a) of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1981, ch. 91½, par. 4—306(a)), dealing with procedures for the commitment of a voluntary patient, provides as follows:

> "A client 18 years of age or over, who is not under guardianship, shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays and holidays, after he submits a written objection to the facility director, * * * unless within the 5 day period a petition and certificate conforming to the requirements of Section 4—501

are filed with the court. Upon receipt of the petition, the court shall order a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, and to be conducted pursuant to Article VI of this Chapter. Admission of a client may continue pending further order of the court."

The respondents argue that prior to the filing of the written objection, this language guarantees their right to seek a discharge and insulates them from a petition seeking involuntary commitment. The respondents cite two cases in support of their position: *In re Clement* (1975), 34 Ill. App. 3d 574, and *People v. Hill* (1979), 72 Ill. App. 3d 638.

In both cases, the court held that a patient who voluntarily commits himself is afforded certain rights by statute. One of those is the "unqualified right to request to leave a Department facility at any time." (*People v. Hill* (1979), 72 Ill. App. 3d 638, 640-41; *In re Clement* (1975), 34 Ill. App. 3d 574, 577.) In both cases, the court held that section 5—3 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 5—3) mandated that the respondents cannot be subject to involuntary commitment proceedings until the respondent gave statutory notice of his or her desire to leave the facility. *People v. Hill* (1979), 72 Ill. App. 3d 638, 641.

The facts in *Clement* are similar to the facts in the instant cases. In *Clement* the respondent was voluntarily admitted on January 21, 1975. Thereafter, his condition deteriorated. He had to be placed in restraints almost daily, and he physically assaulted other patients and staff. In April of 1975, a clinical review committee met to consider Clement's case. The committee noted that respondent was a voluntary patient, and although it was unlikely he would request to sign a five-day notice, it was possible. Therefore, there was a decision to file a petition for involuntary commitment. Prior to a hearing on the petition, respondent's counsel filed a motion to dismiss the petition on the basis that respondent was a voluntary patient. The court denied the motion, finding that there was no reason to dismiss an involuntary commitment petition merely because a person was presently in a hospital on a voluntary basis. After the hearing the trial court found the respondent to be in need of mental treatment and ordered that he be hospitalized by the Department of Mental Health in the Chester Mental Health Center.

In reversing this order of the trial court, the appellate court recognized that even though the evidence overwhelmingly indicated that respondent's condition deteriorated severely after he entered the hospital as a voluntary patient, his status as a voluntary patient could not be changed without compliance with the statute. The court determined that section 5—3 of the Mental Health Code was the only provision of the Code which specifies the procedure for the commitment of a voluntary patient. The court stated that the language of that section is "clear,

unambiguous, and mandatory, and only becomes operative when a voluntary patient requests that he leave the hospital." *In re Clement* (1975), 34 Ill. App. 3d 574, 576.

■■ While *Clement* can be distinguished from the case at bar in that *Clement* was decided under section 5—3 of the former Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 5—3), and the instant cases were decided under section 4—306(a) of the new Mental Health and Developmental Disabilities Code, the provisions of the two sections are virtually the same. The legislature is presumed to have been aware of judicial construction of section 5—3 when enacting the new section 4—306(a). (*Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 513.) The virtual re-enactment of a statute which has been judicially construed is an adoption of the construction, unless a contrary intent is evident. (*Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 380; *Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 513.) Because no contrary intent is discernible it is assumed that the legislature intended for the new section 4—306(a) to have the same effect and construction as section 5—3.

In addition we note that in *Clement*, the appellate court found support for its position in the provisions of section 5—2 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 5—2). These provisions were substantially readopted in section 4—303 of the Mental Health and Developmental Disability Code (Ill. Rev. Stat. 1981, ch. 91½, par. 4—303). Both section 4—303 of the present mental health code and section 5—2 of its predecessor require that at the time of an application for voluntary admission, the applicant be advised in simple language of his right to be discharged at any time unless within 5 days of the request to leave, a petition for involuntary commitment is filed. We agree with *Clement*; such language suggests that the voluntary patient's right to leave is "the focal point of his voluntary status." *In re Clement* (1975), 34 Ill. App. 3d 574, 577.

Moreover, the State seems to concede that the similarity of these two provisions seems to preclude such a distinction. The State's main contention is that *Hill* and *Clement* did not properly interpret the code.

The State asserts that section 4—501 of the code (Ill. Rev. Stat. 1981, ch. 91½, par. 4—501), contains no limitations on the persons subject to commitment, but rather gives broad authority in seeking judicial admissions. It is argued that because there is no logical reason why a patient should not be subject to having their voluntary commitment status changed to involuntary, section 4—306(a) should not be interpreted to limit that authority. We note, however, that there are several logical reasons to allow section 4—306(a) to limit the authority of section 4—501. One reason would be to encourage voluntary commitment cases. It

appears that under the provisions of the code, in exchange for seeking voluntary commitment, a person is granted protection from the stigma of involuntary commitment proceedings until that person gives a written notice of intent to leave. *People v. Hill* (1979), 72 Ill. App. 3d 638, 642.

It is also contended that the State's interest in protecting society from the potentially dangerous voluntary admittee outweighs the interest of encouraging voluntary admission. Initially, it should be noted that from the evidence at trial it appears that there is no difference in the treatment and confinement of an involuntary committee and the treatment and confinement of a voluntary admittee. Thus, during the period of hospitalization, society is just as protected from a voluntary admittee as it is from an involuntary committee. The sole distinction between voluntary admission and involuntary commitment is that a voluntary admittee can seek discharge pursuant to section 4—306(a). From the language of that section, it appears that any problems suggested by the State concerning the easy availability of a discharge could easily be obviated by commencing an involuntary commitment proceeding during the five-day period within which the State can file an involuntary commitment petition. There appears to be no reason why a person who has voluntarily admitted himself into a hospital should unnecessarily be given the stigma of involuntary commitment.

■■ We conclude that the logic and language of *Clement* are still controlling. Absent a notice of intent to leave, the State has no authority to bring an involuntary commitment petition against the person who is already voluntarily hospitalized.

The orders of the circuit court of Lee County granting the petition for involuntary admission of Donald Wall and Sherrie Meyer are reversed.

It is also contended on appeal that the trial court erred in ordering the Guardianship and Advocacy Commission, the respondents' court-appointed attorneys, to pay for respondents' transcripts.

Initially it should be noted that both the respondents and the State agree that pursuant to section 4—613(b) of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1981, ch. 91½, par. 4—613(b)) respondents are entitled to free transcripts. Section 4—615(b) of the Code further provides as follows:

> "The court may assess costs of the proceedings against the parties. If the respondent is not a resident of the county in which the hearing is held and the party against whom the court could otherwise assess costs has insufficient funds to pay the cost, the court may enter an order upon the State to pay the costs of the proceedings, from funds appropriated by the General Assembly for that purpose." Ill. Rev. Stat. 1981, ch. 91½, par. 4—615(b).

It appears that pursuant to this section, the trial court assessed the

costs of the transcripts against the Guardianship and Advocacy Commission.

The primary issue raised by respondents is not whether section 615(b) is applicable, but whether the court had authority under this section to charge the Guardianship and Advocacy Commission merely because it was a State agency appointed to represent the respondents. On this issue, it seems that both the parties agree that the Guardianship and Advocacy Commission should not be the party responsible for the costs of the transcripts. Because there was no showing that any State funds had been appropriated and allocated to the agency for this purpose, we agree. We, therefore, reverse the order of the trial court ordering the Guardianship and Advocacy Commission to be responsible for paying the court reporter for respondents' transcripts.

We remand the matter for a new hearing to determine the proper person or authority to be ordered to pay the costs of the transcripts. Since there may be a conflict between the interests of the County of Lee and the State, the State's Attorney is not in a position to represent both the State and the county. We, therefore, direct the petitioner to give notice to the Attorney General, as the attorney for the State, of the purpose, place and time of the hearing.

Reversed in part; reversed and remanded in part.

LINDBERG and REINHARD, JJ., concur.