(No. 58724-

*In re* ROBERT HAYS (The People of the State of Illinois, Appellee, v. Robert Hays, Appellant).

*Opinion filed June 6, 1984.*

Neil Hartigan, Attorney General, of Springfield, and Basil G. Greanias, State's Attorney, of Decatur (Mark L. Rotert and Ellen M. Flaum, Assistant Attorneys General, of Chicago, and Robert J. Biderman and Rebecca L. White, of the State's Attorneys Appellate Service Com-

mission, of Springfield, of counsel), for the People.

Jeff M. Plesko, of the Illinois Guardianship and Advocacy Commission, of Carbondale, for appellee.

JUSTICE WARD delivered the opinion of the court:

The circuit court of Macon County declared Robert Hays to be a person subject under the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1981, ch. 91½, par. 3—100 *et seq.*) to involuntary admission to a mental health facility. The appellate court reversed, with one judge dissenting (115 Ill. App. 3d 686), and we granted the State's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315).

On October 11, 1982, Robert Hays, 19 years old, voluntarily admitted himself to the psychiatric unit of Mercy Hospital in Urbana. He had been voluntarily admitted there on nine previous occasions over the preceding four years. The day following his admission, he twice refused to take medication. He threw a phone at security guards, became physically resistive, and had to be physically restrained and given medication. After being restrained, he told a nurse that he wanted to die. He later became quiet and did not cause further disturbance.

After this incident, the hospital petitioned the circuit court to have Hays declared a person subject to involuntary admission under article VI of the Code (Ill. Rev. Stat. 1981, ch. 91½, par. 3—600 *et seq.*). This was done, it was said, in order to transfer Hays to an institution with better facilities for his treatment.

On the evening following Hays' outburst, a physician executed the first certificate required under section 3—602 for an involuntary commitment (Ill. Rev. Stat. 1981, ch. 91½, par. 3—602). Hays was transferred that night to the Adolph Meyer Health Center in Decatur, a State facility. The next day the second certificate, which the

statute requires to be executed by a psychiatrist, was prepared. At a hearing in the circuit court of Macon County, Hays was formally declared a person subject to involuntary admission.

The record shows that Hays was discharged from the Meyer facility on December 20, 1982, and though the question has not been raised by the parties, it is proper to comment on the question of mootness. We consider that review of the circuit court's action is appropriate, as the character of an involuntary commitment has been held to be of sufficient significance to permit the invoking of the "collateral consequence" exception to the mootness doctrine. *In re Garcia* (1978), 59 Ill. App. 3d 500, 502-03.

The single question presented is whether a petition for involuntary commitment of a voluntarily admitted patient may properly be brought when the patient has not made a request to be discharged. The State contends that there is no prohibition in the Code against a hospital's initiating a petition for involuntary commitment against a voluntary patient. The State argues that if a private hospital could not so proceed, there would be no way to transfer an "unsuitable" patient to another facility.

The appellate court has answered the question in the negative. (*In re Meyer* (1982), 107 Ill. App. 3d 871; *People v. Hill* (1979), 72 Ill. App. 3d 638; *In re Clement* (1975), 34 Ill. App. 3d 574.) In *Clement* the court said:

> "We hold that a voluntary patient under the Code has an unqualified right to request to leave a Department facility at any time. Absent such a request by the patient, the Department may not infringe on this right by the institution of commitment proceedings. Only when the voluntary patient exercises his right and submits a written notice of his desire to leave may the Department exercise its right to file a petition for involuntary commitment.

[Clement] was committed in a manner not authorized by statute. He entered the hospital as a voluntary patient, and the subsequent commitment, with its accompanying stigma, deprived him of his right to request to leave without due process." 34 Ill. App. 3d 574, 577.

Article III of the Code provides for the admission and discharge of adults in mental health facilities. (Ill. Rev. Stat. 1981, ch. 91½, par. 3—100 *et seq.*) An adult may be admitted "voluntarily" into a facility upon the filing of an application and the facility's acceptance of the patient as "clinically suitable." (Ill. Rev. Stat. 1981, ch. 91½, par. 3—400.) The application must contain a statement of the patient's right under the statute to a discharge, and the facility must orally inform him upon admission of this right. (Ill. Rev. Stat. 1981, ch. 91½, par. 3—401.) Section 3—403 sets out this right to discharge:

"A voluntary patient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays and holidays, after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5 day period a petition and 2 certificates conforming to the requirements of paragraph (b) of Section 3—601 and Section 3—602 [which pertain to involuntary commitment] are filed with the court. Upon receipt of the petition, the court shall order a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, and to be conducted pursuant to Article IX of this Chapter. Hospitalization of the patient may continue pending further order of the court." Ill. Rev. Stat. 1981, ch. 91½, par. 3—403.

The Code also sets out the procedure for emergency involuntary commitment. (Ill. Rev. Stat. 1981, ch. 91½, par. 3—600 *et seq.*) First a petition must be brought stating that "hospitalization is necessary for the protection of such person or others from physical harm." (Ill. Rev. Stat. 1981, ch. 91½, par. 3—601.) In addition, two certif-

icates stating that involuntary commitment is necessary must be secured in order for the petition to be heard by the court. (Ill. Rev. Stat. 1981, ch. 91½, pars. 3—602, 3—610.) The first certificate must accompany the petition and have been executed by a "physician, qualified examiner, or clinical psychologist." The second must have been prepared by a psychiatrist, and its submission is required before the court shall conduct a hearing.

These provisions relating to involuntary commitment do not make reference to proceeding against a voluntarily admitted patient. The reference is found only in the sections on voluntary commitments. As set out above, section 3—403 states that a voluntarily committed patient must be released within five days after an unrevoked written notice of his desire to be discharged "unless *** within the 5 day period a petition [for involuntary commitment] and 2 certificates *** are filed with the court." (Ill. Rev. Stat. 1981, ch. 91½, par. 3—403.) Thus, in the case of a voluntarily admitted patient, involuntary-commitment proceedings must be preceded by a voluntary patient's request for discharge.

A voluntary admission serves an important purpose and generally is considered to be the preferred method of commencing treatment of mental illness. "The advantages of voluntary admissions flow from the absence of compulsion in the initiation of psychiatric treatment. Psychiatric evidence indicates that a patient who recognizes his condition and voluntarily undertakes therapy is more likely to be rehabilitated than one upon whom treatment is forced." (*Developments in the Law, Civil Commitments of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1399 (1974); see also Comment, *Temporary Detention of "Voluntary" Patients by Hospital Authorities: Due Process Issues*, 12 N.M.L. Rev. 791, 792-93 (1982).) The benefits of voluntary admission, however, "are less likely to be realized and persons who recognize their need for

hospitalization are less likely to seek it if *** they then can be subjected to involuntary commitment without a significant change in their condition, the perception of their condition, or their willingness to be hospitalized." *Appeal of Niccoli* (1977), 472 Pa. 389, 399, 372 A.2d 749, 754.

The rights given voluntarily admitted patients under our code show a legislative intent to encourage voluntary admissions. An important means of encouraging voluntary submission to treatment for mental problems is to grant voluntary patients the right to request their discharge. Of course, the public must be protected from persons dangerous because of mental illness. Accordingly, the Code provides that a voluntary patient who requests discharge may nevertheless be subject to an involuntary commitment if he is deemed to be dangerous to himself or others. Section 3—403, which we set out above, provides that in this one instance an involuntary petition may be brought against a voluntarily-admitted patient within the five-day period prescribed in the statute following his request for discharge.

We hold, therefore, that the statutory rights of Robert Hays arising from his voluntary admission were violated.

The Code does not directly address the situation in which the condition of a voluntarily committed patient deteriorates to the extent that he is unable to request discharge or understand his right to do so. While a State facility may transfer a patient to another State facility when it is deemed "clinically advisable," a private institution may not invoke these provisions of the Code. (Ill. Rev. Stat. 1981, ch. 91½, pars. 3—908 to 3—910; see also *In re Clement* (1975), 34 Ill. App. 3d 574.) However, if the condition of a patient voluntarily admitted to a private facility has deteriorated so that he cannot be adequately cared for at the facility and he is unable to re-

quest discharge, the facility may notify public mental health authorities and release the patient into their custody to permit the instituting of an involuntary-commitment proceeding. If the legislature deems that a different procedure should be followed under those circumstances, it can enact specific legislation to meet the problem.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*