*In re* KENNETH LAWRENCE, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Kenneth Lawrence, Respondent-Appellant).

Second District   No. 2—91—0881

Opinion filed January 26, 1993.—Rehearing denied February 26, 1993.

William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The circuit court of Kane County, in a bench trial, ordered the involuntary commitment of Kenneth Lawrence to the Department of

Mental Health pursuant to the Mental Health and Developmental Disabilities Code. (Ill. Rev. Stat. 1991, ch. 91½, par. 1—100 *et seq.*) Lawrence appeals from that order on the ground that the commitment hearing was invalid for several reasons. We reverse.

On April 23, 1990, while experiencing a fit of paranoia, Lawrence attempted to end his life by repeatedly slashing his chest with a pocket knife causing approximately 30 stab wounds. Lawrence was hospitalized for these self-inflicted injuries, was placed in a psychiatric hospital, and was discharged in June 1990. Physicians at the hospital prescribed lithium for Lawrence's condition. In August 1990, Lawrence experienced another mental lapse, barricaded himself in his bedroom, and stabbed himself with a carving knife. Lawrence again received medical and psychiatric treatment for these injuries. After leaving St. Francis Hospital, Lawrence experienced feelings of agitation and decided that he needed help from a mental health professional. Therefore, on May 6, 1991, he voluntarily admitted himself into the Elgin Mental Health Center.

On June 10, 1991, a petition and accompanying medical certificates were filed pursuant to section 3—600 (Ill. Rev. Stat. 1991, ch. 91½, par. 3—600 *et seq.*) in order to secure Lawrence's involuntary admission at the Elgin Mental Health Center. The petition asserted that immediate hospitalization was necessary to protect Lawrence from harming himself and to prevent harm to others.

Lawrence argues that he should not have been subject to involuntary commitment proceedings in the absence of evidence that he made a written request to terminate his voluntary commitment pursuant to section 3—403. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—403.) The State argues that involuntary commitment proceedings were properly commenced without a written notice because Lawrence failed to reaffirm his desire to continue treatment pursuant to section 3—404. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—404.) We agree with Lawrence.

■ Section 3—403 sets forth guidelines whereby an individual who has obtained voluntary admission to a mental health facility may be discharged from that facility after giving a written notice of his desire to leave. Section 3—403 provides in relevant part:

> "A voluntary patient shall be allowed to be discharged from [a] facility *** after he gives any treatment staff person written notice of his desire to be discharged unless *** a petition and 2 certificates conforming to the requirements of paragraph (b) of Section 3—601 and Section 3—602 are filed with the court. Upon receipt of the petition, the court shall order a hearing ***." (Ill. Rev. Stat. 1991, ch. 91½, par. 3—403.)

Thus, the patient's requested discharge may be opposed by the facility director, who can file a petition seeking to subject the patient to involuntary commitment. Ill. Rev. Stat. 1991, ch. 91½, pars. 3—403, 3—601, 3—602.

Section 3—403 serves an important public policy of encouraging people to seek treatment for their mental problems. (*In re Hays* (1984), 102 Ill. 2d 314.) In order to accomplish this goal, section 3—403 sets forth requirements which ensure a patient some control over his status whereby he can request his own discharge. (*In re Splett* (1991), 143 Ill. 2d 225.) By allowing an individual to voluntarily submit to and withdraw from psychiatric treatment, these provisions serve to (1) protect the patient's important liberty interests and (2) shield the patient from a stigma which may accompany an involuntary commitment. *In re Clement* (1975), 34 Ill. App. 3d 574.

Another policy reflected by the statute is one which seeks to protect the public from individuals who pose a danger to themselves and to the public. (*Hays*, 102 Ill. 2d at 320.) To accomplish this policy goal, section 3—403 sets forth guidelines whereby a voluntarily admitted patient can be subject to involuntary commitment proceedings.

These polices are balanced by requiring a voluntarily admitted patient to request his release in writing before involuntary admission proceedings can be taken against him. (*Splett*, 143 Ill. 2d at 234.) According to *Splett*, "the State may alter a voluntarily admitted patient's status *only* after the patient has submitted a written request for discharge." (Emphasis added.) *Splett*, 143 Ill. 2d at 234; see also *Hays*, 102 Ill. 2d 314; *In re Weimer* (1991), 219 Ill. App. 3d 1005; *People v. Hill* (1979), 72 Ill. App. 3d 638; *In re Clement* (1975), 34 Ill. App. 3d 574.

■ Section 3—404 differs from section 3—403 in that it sets forth a format whereby a voluntarily admitted patient's record is reviewed in order to assess the need for continuing hospitalization. This section provides in relevant part:

> "[T]he facility director shall consult with the patient if continuing hospitalization is indicated and request from the patient an affirmation of his desire for continued treatment. The request and affirmation shall be noted in the patient's record. * * * A patient's failure to reaffirm a desire to continue treatment shall constitute notice of his desire to be discharged." Ill. Rev. Stat. 1991, ch. 91½, par. 3—404.

Construing sections 3—403 and 3—404 together, the State argues that a patient's failure to reaffirm a desire to continue treatment shall constitute a notice of a desire to be discharged which would allow the

hospital to commence involuntary commitment proceedings. The State asserts that the words "failure to affirm" which appeared on the face of the petition for involuntary admission amounted to the same type of discharge notice addressed in section 3—403.

We agree that a failure to reaffirm, if accurately and adequately recorded, may, in some instances, satisfy the "written notice of [a] desire to be discharged" requirement set forth in section 3—403. (Ill. Rev. Stat. 1991, ch. 91½, par. 3—403.) However, no such record was presented in the present case. The words on the face of the involuntary admission petition do not satisfy the policies or the requirements of the statutes discussed. For example, section 3—404 requires that the request and affirmation of the patient's desire to continue treatment be noted in the patient's record. We see no evidence of such a request or response in the record before us. Furthermore, the language on the petition for involuntary admission is *not* evidence of the patient's desire to° discontinue treatment. (*In re Weimer* (1991), 219 Ill. App. 3d 1005, 1009.) In *Weimer*, we determined that language appearing on the face of an involuntary commitment petition serves only as a showing of probable cause to initiate the involuntary commitment hearing and not as evidence of the patient's alleged desire for discharge. *Weimer*, 219 Ill. App. 3d at 1009.

It is possible that language in the petition reflects an oral statement made by Lawrence to discontinue treatment. However, according to *Splett*, an oral request is not sufficient to activate the statutory requirements for initiating an involuntary admission proceeding. (*Splett*, 143 Ill. 2d at 234.) The State also argues, without citing to the record, that Lawrence's entire defense of this case is inconsistent with any claim that he may have been willing to remain voluntarily committed. We do not agree. This argument completely ignores the loss of liberty and the attendant stigma involved in an involuntary commitment proceeding. Lawrence's defense of this case could legitimately be grounded upon these important policies.

Because the record in the present case fails to show that Lawrence had submitted an effective request for discharge prior to the State's initiation of involuntary admission proceedings, we conclude that the involuntary admission order must be considered invalid. Therefore, we reverse the involuntary admission order and restore Lawrence to his original status as a voluntary admittee.

Lawrence also argues the trial court lacked subject matter jurisdiction because the written notice of discharge did not meet the statutory requirements discussed above. We do not agree with this contention, and we do not make it a basis of our reversal. (See *In re Devine*

(1991), 214 Ill. App. 3d 1.) Lawrence also sought reversal on the ground that the commitment order was not the least restrictive treatment alternative and on the ground that clear and convincing evidence was not presented regarding the threat he posed to himself and to others. We need not address these issues because we find Lawrence's first contention dispositive as to the need for a reversal of the judgment.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and Lawrence's status as a voluntary admittee is reinstated.

Reversed.

INGLIS, P.J., and UNVERZAGT, J., concur.