Rule 23 Order filed
December 9, 2005;
Motion to publish granted
January 13, 2006.

NO. 5-05-0407

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* JAMES E. | ) Appeal from the Circuit |
| | ) Court of Madison County. |
| (James E., Petitioner-Appellant, v. The People of the | ) |
| State of Illinois, Respondent-Appellee). | ) No. 05-MH-91 |
| | ) |
| | ) Honorable Barbara Crowder, |
| | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

James E., the petitioner, appeals from the denial of his petition for a declaratory judgment and the denial of his posttrial motion by the circuit court of Madison County. He contends that the court misinterpreted the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/1-100 *et seq.* (West 2004)) when it ruled that he was required to tell the personnel at Gateway Regional Medical Center (Gateway) that he did not wish to reaffirm his voluntary admission status before the facility was obligated to either discharge him or file a petition seeking his involuntary admission. He seeks the reversal of the trial court's judgment.

BACKGROUND

On May 17, 2005, the petitioner was admitted as an inpatient to Gateway, purportedly as a voluntary admission. The State filed a petition for the involuntary administration of psychotropic medication under section 2-107.1 of the Code (405 ILCS 5/2-107.1 (West 2004)) on May 20, 2005. On June 23, 2005, the petitioner filed a petition in which he asserted that he was being unlawfully held. He sought a declaration of his rights and a judicial determination that his continued confinement in Gateway was unconstitutional. He

1

asserted that he was entitled to a discharge from the facility because the director of the facility had failed to consult with him 30 days after his admission to determine whether he wanted to continue as a voluntary inpatient, as required by section 3-404 of the Code (405 ILCS 5/3-404 (West 2004)).

The petition was heard on June 28, 2005. The petitioner's counsel argued that it was too late for the State to make the inquiry that was required under section 3-404 of the Code and that the petitioner had become entitled to an immediate discharge from Gateway as of the thirty-first day after his admission in the absence of an inquiry by the director and an expressed desire on his part to continue as a voluntary inpatient. He also contended that he was entitled to a discharge because the director did not file a petition for involuntary admission within 5 business days of the expiration of the 30-day period of voluntary admission. The court held that the petitioner was required to make an affirmative request for his discharge in order to trigger a duty for Gateway to either file a petition for involuntary commitment or discharge him. The petitioner told the court that he did not want to remain at Gateway and that he did not want to be medicated. The court went on to rule that the petitioner's oral request in court for a discharge began the running of the five-day period during which Gateway was required to either seek his involuntary commitment or move to discharge him, and it denied the petition for a declaratory judgment. The court also considered and granted the motion for the involuntary administration of psychotropic medication.

On June 29, 2005, the petitioner filed a motion for reconsideration or a new trial, with a supporting memorandum, and he followed it some days later with the citation of additional authority for his position. The motion was denied on July 5, 2005. On July 6, 2005, the petitioner filed a motion to reconsider the court's denial of his June 29, 2005, filings. He stated that he was entitled to a new trial on his amended petition for a declaratory judgment

2

because had he been aware that the court would rule that the effective date of his failure to reaffirm his voluntary status would be the date on which he notified Gateway of his desire to leave, he would have introduced evidence that he had, in fact, made known his desire to leave "numerous times in the three weeks prior to the June 28, 2005[,] hearing."

On July 7, 2005, the petitioner filed an emergency second petition for a declaratory judgment seeking his discharge from Gateway. He reiterated his previous contentions and asserted that even if the trial court's June 28, 2005, decision was correct, he was indisputably being held unlawfully because more than five days had passed since he expressed his desire to be discharged and the State had neither released him nor named him in a petition for involuntary admission. The petition was heard on July 15, 2005, and found to be moot due to the petitioner's July 11, 2005, discharge from Gateway. On July 14, 2005, the petitioner filed an appeal from the June 28, 2005, denial of his petition for a declaratory judgment and the July 5, 2005, denial of his posttrial motion.

CONTENTIONS ON APPEAL

On appeal, the petitioner contends that he became entitled to an immediate discharge from Gateway on the thirty-first day of his confinement because the director of the facility had failed to make the required inquiry into his willingness to remain a voluntary patient after the petitioner had been admitted for 30 days and, thus, he did not reaffirm a desire to continue in treatment as a voluntary patient. He argues that the court erroneously found that he was required to affirmatively notify Gateway that he did not intend to reaffirm his desire for a voluntary admission despite the fact that the Gateway director had failed to perform a mandatory duty. The State has filed a waiver of answer in which it describes the petitioner's argument and interpretation of section 3-404 as well-taken. It asks that the case be taken under advisement on the strength of the petitioner's brief without a brief from the State.

Although the trial court found the issues raised to be moot due to the petitioner's

3

discharge from Gateway, the scenario presented on appeal is one that is both capable of repetition and incapable of resolution on appeal within a constricted time frame. For that reason, we will entertain the appeal. See *In re Linda W.*, 349 Ill. App. 3d 437, 442, 812 N.E.2d 49, 53 (2004).

STANDARD OF REVIEW

Questions regarding statutory construction are subject to *de novo* review. *In re Robert S.*, 213 Ill. 2d 30, 45, 820 N.E.2d 424, 433 (2004).

DISCUSSION

Because involuntary mental health services entail a " 'massive curtailment of liberty,' " Illinois courts have repeatedly recognized the importance of "the procedures enacted by our legislature to ensure that Illinois citizens are not subjected to such services improperly." *In re Barbara H.*, 183 Ill. 2d 482, 496, 702 N.E.2d 555, 561-62 (1998) (quoting *Vitek v. Jones*, 445 U.S. 480, 491, 63 L. Ed. 2d 552, 564, 100 S. Ct. 1254, 1263 (1980)). This court observed as follows in *In re Linda W.*: "[T]he Code's procedural safeguards are not mere technicalities. Rather, they are essential tools to safeguard the liberty interests of respondents in mental health cases." *In re Linda W.*, 349 Ill. App. 3d at 443, 812 N.E.2d at 53-54. These safeguards also shield the recipient of psychiatric treatment from "the stigma of involuntary commitment" by encouraging voluntary commitment on the part of the mentally ill. See *In re Meyer*, 107 Ill. App. 3d 871, 874-75, 438 N.E.2d 639, 642 (1982).

Section 3-404 of the Code provides:

"Thirty days after the voluntary admission of a recipient, the facility director *shall* review the recipient's record and assess the need for continuing hospitalization. The facility director *shall* consult with the recipient if continuing hospitalization is indicated and request from the recipient an affirmation of his desire for continued treatment. The request and affirmation *shall* be noted in the recipient's record. Every

4

60 days thereafter a review *shall* be conducted and a reaffirmation *shall* be secured from the recipient for as long as the hospitalization continues. A recipient's failure to reaffirm a desire to continue treatment *shall* constitute notice of his desire to be discharged." (Emphasis added.) 405 ILCS 5/3-404 (West 2004).

Section 3-403 sets out the procedure by which a voluntary patient may seek discharge from a mental health facility at any time:

"A voluntary recipient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays[,] and holidays, after he gives any treatment staff person written notice of his desire to be discharged[,] unless he either withdraws the notice in writing or unless within the 5[-]day period a petition and 2 certificates conforming to the requirements of [the paragraph governing involuntary admission] are filed with the court. Upon receipt of the petition, the court shall order a hearing to be held within 5 [business] days ***." 405 ILCS 5/3-403 (West 2004).

Absent a notification from a voluntary admittee that he wants to be discharged, the facility cannot file a petition for the involuntary commitment of that person. *In re Hays*, 102 Ill. 2d 314, 320, 465 N.E.2d 98, 100-01 (1984). The court in *In re Lawrence*, 239 Ill. App. 3d 424, 427, 607 N.E.2d 659, 661 (1993), held that "a failure to reaffirm [a desire to remain a voluntary admittee], if accurately and adequately recorded, may, in some instances, satisfy the 'written notice of [a] desire to be discharged' requirement set forth in section 3-403" but that the record in *In re Lawrence* was insufficient to reach the conclusion that the petitioner had failed to reaffirm that he wanted to voluntarily remain in the facility.

The courts resort to the plain language of a statute as their first source of information about legislative intent, and the use of the term "shall" is indicative of the legislature's intention that the statutory provision is meant to be mandatory, not directory. *Read v.*

5

*Sheahan*, 359 Ill. App. 3d 89, 93, 833 N.E.2d 887, 891 (2005). If a statute is mandatory, strict compliance therewith is required. *Andrews v. Foxworthy*, 71 Ill. 2d 13, 19, 373 N.E.2d 1332, 1334 (1978). There are times, however, when "shall" is viewed as a directive term, not one that is indicative of an intention of the legislature that the statute be interpreted as a mandatory one: "while 'shall' ordinarily indicates a mandatory legislative intention, it may be construed as permissive if the context so indicates." *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1301 (1990). The *Andrews* court considered the use of "shall" in statutory language and held as follows:

> "[W]hen a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends on its purpose. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. If, however, the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory." *Andrews*, 71 Ill. 2d at 21, 373 N.E.2d at 1335.

As noted above, the right of a mental health care patient to be free from involuntary commitment or the administration of psychotropic medication is a core right of individual liberty. It is clear that in section 3-404, the legislature drafted a statute that was intended to protect the rights of recipients of mental health care. It absolutely mandated that the director of a mental health facility first review the file of a voluntarily committed patient 30 days after his admission to the facility and then assess his need for further inpatient treatment, discuss the options with the patient, and obtain his express agreement to continue as a voluntary inpatient. The patient's response–that he wishes to remain a voluntary patient or that he wants to leave the facility–will compel the director to either (1) continue the patient to be

6

treated as a voluntary patient or (2) discharge the patient from the treatment facility or (3) file within five days a petition for involuntary admission pursuant to section 3-600 of the Code (405 ILCS 5/3-600 (West 2004)). Section 3-404 places the burden of action on the director of the facility, not the patient. Moreover, the statute does not require a voluntary admittee to put his desire to leave a facility in writing, as evidenced by the statutory provision, "A recipient's failure to reaffirm a desire to continue treatment *shall constitute notice* of his desire to be discharged." (Emphasis added.) 405 ILCS 5/3-404 (West 2004). The director's failure to fulfill his mandatory duty 30 days after a patient is voluntarily admitted causes the 5-day period for discharge or the filing of a petition for involuntary admission to begin to run without imposing any burden on the recipient of mental health care to perform a positive act. Obviously, if the patient wants to remain in the facility, he may agree to a new period of voluntary commitment.

The record in the instant case is devoid of any indication that the director fulfilled his mandatory duty under section 3-404 of the Code. The State did not present any evidence at the June 28, 2005, hearing to rebut the petitioner's counsel's assertion that no reaffirmation had been solicited or made. The State's counsel looked through the petitioner's chart and concluded that the director had in fact not asked the petitioner if he wanted to continue as a voluntary admission. The petitioner was thus entitled to the grant of his motion for a declaratory judgment, and the trial court committed reversible error by finding that he was required to make a demand for discharge.

Moreover, the court treated the petitioner's June 28, 2005, in-court demand for discharge from Gateway as a formal request for his discharge, despite the fact that it was not in writing. The State was on notice as of that date that the petitioner wanted to be discharged, and yet it neither discharged him nor filed a petition for his involuntary commitment within five days of that request. Given that even if the trial court had properly

7

found that he was not entitled to a discharge due to the director's failure to make the mandatory inquiry, the petitioner was entitled to a discharge as of June 16, 2005, and any petition for an involuntary admission would have been untimely even had it been filed on that date. See *In re Guthrie*, 196 Ill. App. 3d 352, 354, 553 N.E.2d 735, 736 (1990).

We find that under section 3-404 of the statute, a patient need not perform an affirmative act to preserve his right to be discharged from a facility, because it is the responsibility of the director to seek him out at the end of the first 30 days of hospitalization and request that the patient reaffirm his desire to continue voluntary treatment. If the director fails to comply with section 3-404, the voluntary patient becomes entitled to a discharge from treatment on the thirty-first day following his voluntary admission without giving written notice of his desire for a discharge. The facility must, within five days of the thirtieth day of his first voluntary admission, either discharge him from treatment or file a petition for involuntary admission. It follows that if a voluntary admittee affirms his desire to voluntarily remain in the facility within 30 days of his admission and does not thereafter seek a discharge from the facility pursuant to section 3-403 of the Code, he is entitled to a discharge from treatment at the end of each of the successive 60-day periods of voluntary admission provided for by the statute if the director fails to perform the statutorily mandated duty of inquiry.

## CONCLUSION

For the foregoing reasons, we find that the denial of the petition for a declaratory judgment was erroneous, and it is therefore reversed.


Reversed.


WELCH and McGLYNN, JJ., concur.