*In re* HAROLD WATTS, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Harold Watts, Respondent-Appellant).

Fifth District   No. 5—92—0067

Opinion filed September 17, 1993.

John B. Lower, Jeff M. Plesko, and Penelope S. Karnes, all of Guardianship & Advocacy Commission, of Anna, for appellant.

Darrell Williamson, State's Attorney, of Chester (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a hearing in the circuit court of Randolph County, the trial court ordered respondent, Harold Watts, involuntarily admitted to a mental health facility. Respondent appeals, arguing that his admission must be reversed because (1) the hearing was neither set nor held within five days after receipt of the second certificate in violation of section 3—706 of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1991, ch. 91½, par. 3—706), (2) no dispositional report was prepared or considered in violation of section 3—810 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—810), (3) the least restrictive appropriate treatment was not ordered in violation of section 3—811 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—811), and (4) the trial court's findings were not supported by clear and convincing evidence. We reverse and remand.

On December 26, 1991, a petition for involuntary admission was filed against respondent, an inmate in the Department of Corrections who was scheduled for mandatory supervised release from that Department on January 30, 1992. The petition alleged that respondent was mentally ill and was reasonably expected to inflict harm upon

himself or another in the near future and was unable to provide for his own physical needs. Two certificates, authored by appropriate medical personnel, were attached to the petition. The petition and the attached certificates revealed that respondent is in poor health, suffering from chronic obstructive pulmonary disease. It further revealed that respondent has a history of alcoholism which has resulted in an organic mental disorder, and he has been diagnosed as borderline personality. The petition asserted that respondent has "no insight into his mental state and refuses medications when not under close observation."

On January 9, 1992, a hearing was scheduled for January 17, 1992, and counsel was appointed for respondent. Respondent was served notice of the hearing on January 10, 1992. Dr. Sam Parwatikar, a psychiatrist at Menard Psychiatric Center, was the State's only witness. Dr. Parwatikar testified that respondent has brain damage due to chronic alcohol abuse and suffers from chronic emphysema. According to Dr. Parwatikar, respondent was on "enforced medications," which respondent denied during his testimony. Dr. Parwatikar opined that respondent would discontinue taking his medications if released, but respondent testified he would take medication.

Respondent testified on his own behalf that he planned to serve his parole in Indiana. If this plan was rejected, his second plan was to live at a Salvation Army center in Centralia or a Catholic Charities in Joliet until he received his first supplemental security income check from the Social Security Administration. Respondent had already contacted the Social Security Administration about resumption of such benefits and planned to see if he could resume his former job in Centralia.

After hearing the evidence, the trial court found that respondent was a person subject to involuntary admission and ordered that he be transferred to the Department of Mental Health upon his release from the Department of Corrections. An order hospitalizing respondent in the Department of Mental Health was entered on January 17, 1992. Respondent appeals from that order.

■ The first argument raised by respondent is that the trial court's order for involuntary admission must be reversed because a hearing was neither set nor held within five days after receipt of the second certificate as required by section 3—706 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—706). The State responds that even though section 3—706 of the Code was violated, such violation does not require reversal because respondent suffered no prejudice or loss

of liberty since he was an inmate in the Department of Corrections. We agree.

The statute involved herein states, in pertinent part:

> "§3—706. The court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after its receipt of the second certificate or after the respondent is admitted to a mental health facility, whichever is earlier." (Ill. Rev. Stat. 1991, ch. 91½, par. 3—706.)

Because involuntary commitment proceedings affect important liberty interests, strict compliance with statutory procedures is required. (*People v. R.C.* (1988), 175 Ill. App. 3d 163, 167, 529 N.E.2d 756, 759; *In re Lamb* (1990), 202 Ill. App. 3d 725, 560 N.E.2d 422.) However, reversal is not required unless respondent is in some way prejudiced by the failure to comply with statutory requirements. See *In re Splett* (1991), 143 Ill. 2d 225, 572 N.E.2d 883; *In re Clark* (1991), 220 Ill. App. 3d 1024, 581 N.E.2d 408.

Here, respondent's liberty interests were already limited due to his incarceration in the Department of Corrections. Respondent was not scheduled for release until January 30, 1992. The hearing took place on January 17, 1992, and the order was entered on the same day. The purpose of section 3—706 of the Code, to provide adequate notice and safeguard against unreasonable commitment, was not violated. Respondent suffered no prejudice because of the trial court's failure to strictly comply with the five-day notice requirement. Therefore, this error does not require reversal.

■ The next argument raised by respondent is that reversal is required because no dispositional report was prepared or considered as required by section 3—810 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—810). The State responds that the second certificate attached to the petition meets the requirements of a dispositional report as set out in section 3—810 of the Code, and to the extent that it may be inadequate, respondent has waived such error by failing to raise the issue in the trial court. We agree with respondent.

Section 3—810 of the Code states:

> "§3—810. Before disposition is determined, the facility director or such other person as the court may direct shall prepare a report including information on the appropriateness and availability of alternative treatment settings, a social investigation of the respondent, a preliminary treatment plan, and any other information which the court may order. The treatment plan shall describe the respondent's problems and needs, the treatment goals, the proposed treatment methods, and a projected

timetable for their attainment. If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." (Ill. Rev. Stat. 1991, ch. 91½, par. 3—810.) Total failure to comply with section 3—810 of the Code constitutes reversible error. (*In re Venegas* (1991), 218 Ill. App. 3d 423, 578 N.E.2d 43; *In re James* (1989), 191 Ill. App. 3d 352, 547 N.E.2d 759; *In re Collins* (1981), 102 Ill. App. 3d 138, 429 N.E.2d 531.) The *James* court explained the rationale for such a holding as follows:

"Involuntary commitment procedures represent the balance between an individual's liberty interests and society's dual interests in protecting itself from potentially dangerous individuals while protecting and caring for those who are unable to care for themselves. (*[In re] Stephenson* [(1977)], 67 Ill. 2d 544, 367 N.E.2d 1273.) Thus, the procedures set forth in the Code are a legislative recognition that civil commitment is a deprivation of personal liberty. The purpose of the procedures is to provide adequate safeguards against unreasonable commitment. (*[People v.] Sansone* [(1974)], 18 Ill. App. 3d [315,] 322, 309 N.E.2d [733,] 738.) Inherent in the civil commitment process is the State's promise that the individual subject to admission will receive treatment. (See generally *[In re] Collins* [(1981)], 102 Ill. App. 3d 138, 429 N.E.2d 531; *Sansone*, 18 Ill. App. 3d 315, 309 N.E.2d 733.) We agree with the *Collins* court's conclusion that a total failure to comply with the section evidences a disregard for the legislatively established procedures. It is contrary to the balancing of interests established by the Code and should not be condoned." *James*, 191 Ill. App. 3d at 356, 547 N.E.2d at 761-62.

In the instant case, no report prior to disposition was prepared. We have reviewed the second certificate attached to the petition which the State argues conforms to the requirements of section 3—810 of the Code and find it to be lacking. The certificate does not contain the necessary information concerning the appropriateness and availability of alternative treatment facilities, nor does it set forth any goals. With regard to a treatment plan, the certificate discusses keeping respondent medicated and checking him at 30-day intervals. It is clear that no dispositional report was made and that the certificate does not conform to the requirements of section 3—810 of the Code. Moreover, even though this argument was not raised in the trial court, such argument is not waived. We are allowed to consider it un-

der a doctrine analogous to plain error. *James*, 191 Ill. App. 3d at 357, 547 N.E.2d at 762.

For the foregoing reasons, the order of the circuit court of Randolph County is reversed and, relying on *In re James* (1989), 191 Ill. App. 3d 352, 547 N.E.2d 759, the cause is remanded for a new hearing wherein the trial court will consider a report as required by section 3—810 of the Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—810). Because of our decision to reverse and remand for a new hearing, we need not address the additional arguments raised by respondent.

Reversed and remanded.

CHAPMAN, P.J., and WELCH, J., concur.