(No. 93608.——)

*In re* JAMES E. (The People of the State of Illinois, Appellee, v. James E., Appellant).

*Opinion filed May 22, 2003.—Rehearing denied September 29, 2003.*

RARICK, J., took no part.
THOMAS, J., specially concurring.

106

Anthony E. Rothert, of Alton, and Elvis C. Cameron and Jeff M. Plesko, of Anna, all of the Guardianship and Advocacy Commission, for appellant.

James E. Ryan, Attorney General, of Springfield, and William R. Haine, State's Attorney, of Edwardsville (Joel D. Bertocchi, Solicitor General, and William L. Browers and Domenica A. Osterberger, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

The trial court found respondent to be subject to involuntary admission to a mental health facility and placed him in the custody of the Department of Human Services. The appellate court affirmed, holding that, under the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/1—100 *et seq.* (West 2000)), an individual may be subject to involuntary commitment to a state mental health facility even though he had initially committed himself voluntarily to a private hospital and had not requested in writing a discharge. No. 5—00—0607 (unpublished order under Supreme Court Rule 23). We granted respondent's petition for leave to appeal (177 Ill. 2d R. 315) and now affirm.

BACKGROUND

On September 5, 2000, respondent, a 20-year-old male, was admitted as a voluntary patient to the inpatient

psychiatric unit of St. Clare's Hospital (St. Clare's), a private hospital in Alton, Illinois. Respondent was diagnosed with substance-induced psychotic disorder. This was respondent's first hospitalization related to mental health services.

On September 8, 2000, respondent was transported to Alton Mental Health Center (Alton) after staff at St. Clare's executed a petition for involuntary admission by emergency certificate pursuant to section 3—600 of the Code (405 ILCS 5/3—600 (West 2000)). On September 11, 2000, the State filed a "Petition for Involuntary/ Judicial Admission" (petition) seeking to admit respondent involuntarily. A second petition was filed the following day. In the second petition, it was alleged that respondent was mentally ill, that because of his mental illness he was reasonably expected to inflict serious physical harm upon himself or another in the near future, and that he was in need of immediate hospitalization to prevent such harm. The second petition stated that respondent had been suspicious, paranoid, and delusional and claimed to have been hearing the "Devil's voice." A knife, which he was going to use to "protect himself from his parents," had apparently been taken away from him. Respondent refused to eat or take his medication. The second petition also referred to a recent incident at a nearby college where respondent struck another student because he thought the student was a threat to him.

The second petition was accompanied by a certificate from a qualified mental health examiner, as required by section 3—602 of the Code (405 ILCS 5/3—602 (West 2000)), in which the examiner indicated that he had examined respondent on September 8, at St. Clare's, and had determined that respondent was mentally ill. The examiner concluded that because of his mental illness he was unable to provide for his basic needs so as to guard himself from serious harm. The examiner found that

respondent exhibited signs of acute psychosis. He had paranoid delusions that his parents were going to kill him and was very preoccupied with religion, believing that he was fighting with the devil. Respondent refused to comply with his treatment or medication and was a threat to his parents.

A hearing on the State's petition was held on September 14, 2000. Respondent's attorney stated that respondent was discharged from St. Clare's because "he didn't want to take medication and because he would not have insurance coverage." Dr. Jim Belman, a licensed clinical psychologist at Alton, testified for the State. Dr. Belman testified that respondent had been diagnosed with substance-induced psychotic disorder. He reiterated the basic facts supporting the allegations contained in the second petition and accompanying certificate, including that respondent heard the voices of Satan and God talking in his head, refused medication, and refused to eat. Dr. Belman also testified regarding continuing problems respondent was experiencing since being moved to Alton.

Prior to the hearing, respondent filed a "Motion to Strike and Dismiss" the petition, arguing that the petition for involuntary admission was improper because it had not been preceded by respondent's making a written request for discharge pursuant to case law under section 3—403. After hearing the evidence, the trial court denied respondent's motion and found respondent to be a person subject to involuntary admission. The appellate court affirmed and rejected respondent's argument that he could not be involuntarily admitted because he did not request in writing to be discharged from St. Clare's.

## ANALYSIS

The question presented in this appeal is one of law, which we review *de novo*. *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998). We are asked to determine whether a hospital not owned and operated by the State of Illinois can

initiate a petition for involuntary commitment against one of its voluntary mental health patients, who has not requested a discharge in writing, to facilitate transferring the patient to a state facility. This issue requires an examination of section 3—403 of the Code, which provides:

> "A voluntary recipient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 business days, excluding Saturdays, Sundays and holidays, after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5 day period a petition and 2 certificates conforming to the requirements of paragraph (b) of Section 3—601 and Section 3—602 are filed with the court. Upon receipt of the petition, the court shall order a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, and to be conducted pursuant to Article IX of this Chapter. Hospitalization of the recipient may continue pending further order of the court." 405 ILCS 5/3—403 (West 2000).

We have had prior occasions to review section 3—403. In *In re Hays*, 102 Ill. 2d 314 (1984), the 19-year-old respondent voluntarily admitted himself to the psychiatric unit of Mercy Hospital in Urbana. He had been voluntarily admitted there on nine previous occasions over the previous four years. On the day following his admission, he refused to take medication, threw a phone at security guards, and became physically resistive. After being physically restrained, he told a nurse that he wanted to die. He was given medication and did not cause any further disturbance. The hospital petitioned the trial court to have the respondent declared a person subject to involuntary admission under the Code (Ill. Rev. Stat. 1981, ch. 91½, par. 3—600 *et seq.*). The purpose of the petition was to permit transfer of the respondent to an institution with facilities better suited to treat him. On the evening after the incident, a physician executed the first certificate required for involuntary commitment. Ill.

Rev. Stat. 1981, ch. 91½, par. 3—602. The respondent was transferred that night to Adolph Meyer Health Center in Decatur, a state facility. The second required certificate, which must be executed by a psychiatrist (Ill. Rev. Stat. 1981, ch. 91½, pars. 3—602, 3—610), was prepared the following day. The trial court declared the respondent to be a person subject to involuntary admission to a mental health facility under the Code. *Hays,* 102 Ill. 2d at 316-17. We affirmed the appellate court's reversal of the trial court. We determined that, under section 3—403, involuntary commitment proceedings may not be brought against a voluntarily admitted patient unless the patient has already submitted a request for discharge. We held that one of the purposes of the Code is to encourage voluntary admissions, and a patient who voluntarily undertakes therapy is more likely to be rehabilitated than one who is involuntarily required to undergo treatment. *Hays,* 102 Ill. 2d at 319-20. An important means of encouraging voluntary admission is to guarantee voluntary patients the right to request their discharge. *Hays,* 102 Ill. 2d at 320.

In *In re Splett,* 143 Ill. 2d 225 (1991), the respondent voluntarily admitted himself to Elgin Mental Health Center, a state facility. A month later, the State filed a petition seeking respondent's involuntary admission. At a hearing, experts for the State testified that the respondent suffered from a bipolar disorder with psychotic features and posed a threat to himself and others. The respondent raised no challenge to the validity of the proceedings. *Splett,* 143 Ill. 2d at 227-28. The trial court found that the evidence of the respondent's mental illness and potential to inflict harm upon himself and others had been established by clear and convincing evidence and that he was subject to involuntary admission. The appellate court reversed, holding that the commitment order was ineffective because the State had failed to

comply with the notice requirements of the Code. *Splett*, 143 Ill. 2d at 228. We affirmed the appellate court but for reasons not discussed in the appellate opinion. We found that respondent was not eligible for involuntary admission because he had not submitted a written request seeking his discharge from the state mental health center to which he had been voluntarily admitted. *Splett*, 143 Ill. 2d at 235. The only reference in the record to a request by the respondent for discharge appeared in the certificate of one of the physicians, who stated that the respondent had "requested his discharge." *Splett*, 143 Ill. 2d at 234. We stated that because the statute expressly states that a request for discharge must be in writing, an oral request is insufficient under *Hays* to implicate involuntary admission proceedings. *Splett*, 143 Ill. 2d at 234. We reiterated our belief, expressed in *Hays*, that section 3—403 is designed to protect a voluntarily admitted patient from losing control over his status. *Splett*, 143 Ill. 2d at 236.

Article VI allows for emergency involuntary admission to a mental health facility of a person in need of immediate hospitalization. 405 ILCS 5/3—600 *et seq.* (West 2000). Nothing in the Code expressly requires that a voluntary patient must first make a written request for discharge before a petition for involuntary admission can be filed under article VI of the Code. Our decisions in *Hays* and *Splett* that a voluntarily admitted patient must have made a written request for discharge in order to proceed with a petition for emergency involuntary admission under section 3—403 were based on perceived legislative intent to encourage voluntary admissions and to allow individuals to maintain a measure of control over their status. We noted in *dicta* in *Hays* that the Code fails to address a situation in which the condition of a patient voluntarily admitted to a private facility has deteriorated so that he cannot be adequately cared for at

the facility and he is unable to request a discharge. Under such circumstances, we reasoned, the facility may notify public mental health authorities and release the patient into their custody to permit instituting an involuntary commitment proceeding. *Hays*, 102 Ill. 2d at 320-21. The problem created by this test is a determination of what deterioration is sufficient to bypass the requirement of a written request for discharge. In some cases, where the patient is completely noncommunicative or has suffered a physical disability, the deterioration of the patient's condition clearly prevents making a written request for discharge. In the instant case, it is clear that respondent was in need of continued treatment. Respondent concedes that the findings that he had a mental illness and that he was reasonably expected to inflict serious harm upon himself or another in the near future are not against the manifest weight of the evidence. The evidence is inconclusive as to whether respondent's condition deteriorated after his admission to St. Clare's so that he was unable to request discharge.

However, the actions of St. Clare's and the record make it apparent that it deemed it could no longer adequately treat respondent. The Code fails to address a situation in which a nonstate hospital, either for clinical or other reasons, cannot continue to treat a voluntary patient already admitted to the facility. A patient who can no longer be treated at a nonstate hospital may be in need of further services, but the nonstate facility, unlike a state facility, does not have the legal means by which to transfer a voluntary patient to a different facility to ensure he or she receives appropriate treatment. The nonstate facility cannot rely on the emergency procedures of article VI unless the patient has requested in writing his discharge. Article VII of the Code provides for involuntary admission to a mental health facility by court order in nonemergency situations. 405 ILCS 5/3—700 *et*

*seq.* (West 2000). The nonstate facility cannot turn to article VII because the patient is already voluntarily hospitalized. Article VII contemplates a situation where the individual whom a petitioner seeks to have involuntarily admitted is permitted to remain at home. See 405 ILCS 5/3—704(a), 3—706 (West 2000). Under *Hays*, St. Clare's would have no options other than to simply discharge respondent altogether or to continue to offer inadequate care, or care for which they would not be reimbursed, while waiting for respondent to make a written request for discharge.

We decline to interpret section 3—403 as operating to absolutely prevent a nonstate hospital from discharging a patient to whom it could no longer offer services. We hold that when a nonstate hospital can no longer adequately treat a voluntarily admitted patient, discharge from the nonstate hospital and the immediate initiation of an involuntary commitment proceeding to a state hospital pursuant to article VI serves to ensure that a patient receives necessary and adequate treatment. We have long held that, in construing a statute, courts presume that the General Assembly, in the enactment of legislation, did not intend absurdity, inconvenience, or injustice. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). We do not believe that the legislature envisioned or would have approved of an interpretation of section 3—403 such that when a nonstate facility can no longer treat a voluntary patient in need of continued treatment, the patient could not be involuntarily committed to a state mental health facility, regardless of his condition or the threat he poses to himself or others. Such a holding would not serve the interests of the public or the patient and creates a process with potential results that are both absurd and frightening.

In so holding, we preserve the general requirement

announced in *Hays* that a written request for discharge must precede the instituting of emergency involuntary commitment proceedings against voluntarily admitted patients. A narrow exception to this requirement arises when a nonstate hospital can no longer adequately administer psychiatric treatment to a voluntarily admitted patient. Respondent argues that this exception creates a loophole through which any petitioner, including the State, could too easily bypass the written-discharge requirements of section 3—403, and that any mental health facility could strip a recipient of his or her voluntary status by simply completing discharge paperwork and initiating involuntary admission proceedings simultaneously. We disagree. We do not deviate from our holdings in *Hays* and *Splett* that one of the purposes of the Code was the encouragement of voluntary admissions. *Hays*, 102 Ill. 2d at 320; *Splett*, 143 Ill. 2d at 233. We reiterate that a patient who voluntarily undertakes therapy is more likely to be rehabilitated than one who is involuntarily required to undergo treatment and that an important means of encouraging voluntary submission is to guarantee voluntary patients the right to request their discharge. *Hays*, 102 Ill. 2d at 319-20; *Splett*, 143 Ill. 2d at 233-34. However, the patient's condition and the potential threat he or she poses to others must be considered. The public must be protected from persons dangerous because of mental illness (*Hays*, 102 Ill. 2d at 320), and individuals must often be protected from harming themselves. It is difficult to achieve a perfect balance between protecting the rights of the individual who has chosen to be voluntarily admitted and ensuring that the individual continues to receive adequate and necessary treatment, thus guarding against the possibility that the patient will inflict harm upon himself or the public. Judicial review of a petition seeking to involuntarily admit a voluntary patient serves to preserve an individual's control over his or her status when possible to do so.

## CONCLUSION

For the foregoing reasons, we find that the procedure followed in the instant case was proper. The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE RARICK took no part in the consideration or decision of this case.

JUSTICE THOMAS, specially concurring:

I agree with the majority's holding that a petition for involuntary commitment may be filed against a voluntarily admitted patient if the facility determines that it can no longer adequately treat the patient. However, I write separately because I would do explicitly what the majority has done implicitly: overrule this court's decision in *In re Hays*, 102 Ill. 2d 314 (1984).

The resolution of this case should be simple. Sections 3—601 and 3—602 of the Code set forth the requirements for a petition for involuntary admission. No one disputes that the State complied with these sections in respondent's case, and that should be the end of the analysis. The reason the analysis does not end where it should is found in our decision in *Hays*, in which this court improperly rewrote section 3—403 of the Code.

Section 3—403 does not prohibit filing involuntary commitment petitions against voluntarily admitted patients. This section merely gives notice to voluntary recipients of mental health services that, if they file a written request for a discharge, they will be discharged within five days unless they withdraw their request, or unless a petition for involuntary commitment is filed within the five-day period. This section does *not* state that a petition for involuntary commitment can be filed against a voluntarily admitted patient *only* if the patient has first requested a discharge in writing. The section merely sets out the two circumstances in which a

voluntarily admitted patient's request for a discharge will be denied. The requirements for involuntary commitment petitions are in sections 3—601 and 3—602. These sections are of general applicability and do not contain any exceptions for people who are already receiving treatment on a voluntary basis.

The majority concedes that our decision in *Hays* was not based on the language of the Code, acknowledging that "[n]othing in the Code expressly requires that a voluntary patient must first make a written request for discharge before a petition for involuntary admission can be filed under article VI of the Code." 207 Ill. 2d at 111. Because a majority of this court now recognizes that the Code does not contain the restriction that we read into it in *Hays*, we should overrule that decision. This is an entirely statutory matter, and our analysis should be based solely on what the Code does and does not require.

In this particular area of the law, we have entered the realm of judicial legislation. First, in *Hays*, we created our own rule that is not based on the language of the statute. We held that a petition for involuntary admission cannot be filed against a voluntary patient unless the patient has first requested a discharge. However, we immediately realized that our new rule was unworkable because an involuntary commitment petition might be necessary if a voluntary patient's condition deteriorates to the point where he cannot request a discharge. Accordingly, we created an exception to our rule for these situations. *Hays*, 102 Ill. 2d at 320-21.

Then today's case came along, and we realized that there was another problem with our rule. What if the treating facility determines that it can no longer adequately treat the patient and involuntary commitment is needed, but the patient's condition has not deteriorated to the point where he cannot request a discharge? This court's response is to create another exception to our

rule to accommodate this factual setting. 207 Ill. 2d at 113. In an area of the law that is purely statutory, we have begun legislating instead of judging. Our analysis should be based on the language of the Code. Following the language of the Code leads to the same result as the majority's analysis because the Code does *not* restrict the class of people who can be the subject of involuntary commitment petitions. The State followed sections 3—601 and 3—602, and thus respondent was properly involuntarily committed.

Another problem with the approach we have taken is that we have created two exceptions that essentially swallow our rule. We have held that a petition for involuntary admission can be filed against a voluntary patient who has not requested a discharge if either (1) the patient's condition has deteriorated to the point that the patient can no longer request a discharge, or (2) the facility determines that it can no longer adequately treat the patient as a voluntary admittee. Although the majority states that it is adhering to the *Hays* rule and creating only a "narrow exception" (207 Ill. 2d at 114), it is difficult to conceive of any other reason than the above two that a petition for involuntary commitment would be filed against someone who is already receiving treatment voluntarily. The majority states that it is absurd to believe that the legislature would not approve of involuntary admissions in cases such as this. 207 Ill. 2d at 113. This is obviously true and is likely precisely why the legislature put no such restriction in the Code. Because the *Hays* rule was not based on the language of the Code, and because we have essentially nullified the rule with today's decision, we should admit that *Hays* was an erroneous decision and overrule it expressly.

CHIEF JUSTICE McMORROW, dissenting:

In the case at bar, the majority holds that a private mental health facility can initiate a petition for involun-

tary commitment against a voluntarily admitted patient even though the patient has not requested discharge in writing. The majority claims that it is carving out an exception to the rule prohibiting such action as set forth by this court in *In re Hays*, 102 Ill. 2d 314 (1984), and affirmed in *In re Splett*, 143 Ill. 2d 225 (1991). However, I believe, as the specially concurring opinion points out, that the purported exception swallows the rule and, consequently, the majority has implicitly overruled this court's decision in *In re Hays*. Because I am not inclined to so easily discard the doctrine of *stare decisis*, especially when the prior opinion of this court was grounded on sound public policy, I respectfully dissent.

Article IV of chapter III of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3—400 (West 2000)) addresses the "Voluntary Admission of Adults" to mental health facilities. Section 3—403 within this article provides:

> "A voluntary recipient shall be allowed to be discharged from the facility at the earliest appropriate time, not to exceed 5 days, excluding Saturdays, Sundays and holidays, after he gives any treatment staff person written notice of his desire to be discharged unless he either withdraws the notice in writing or unless within the 5 day period a petition [for involuntary commitment is] filed with the court." 405 ILCS 5/3—403 (West 2000).

This paragraph was interpreted by this court in *In re Hays*, under circumstances nearly identical to the facts of our present case. In *Hays*, we held that "in the case of a voluntarily admitted patient, involuntary-commitment proceedings *must be* preceded by a voluntary patient's request for discharge." (Emphasis added.) *In re Hays*, 102 Ill. 2d at 319. We reasoned that the rights given voluntarily admitted patients under the Code evinced a legislative intent to encourage voluntary admissions. Further, we found that persons needing treatment would be more likely to seek voluntary admission if they did

not have to fear that they would be subjected to involuntary commitment unless there was a " 'significant change in their condition, the perception of their condition, or their willingness to be hospitalized.' " *In re Hays*, 102 Ill. 2d at 320, quoting *Appeal of Niccoli*, 472 Pa. 389, 399, 372 A.2d 749, 754 (1977).

In *dicta*, the *Hays* court suggested that an exception to the rule that involuntary proceedings may not be brought unless the patient has submitted a written request for discharge might be recognized if the patient had deteriorated to such a point that he or she was unable to request a discharge and the private facility could no longer provide adequate care for the patient. In such cases, the *Hays* court suggested that it would be appropriate for the private facility to "notify public health authorities and release the patient into their custody to permit the instituting of an involuntary-commitment proceeding." *In re Hays*, 102 Ill. 2d at 321.

In the case at bar, there is no evidence that the patient had deteriorated to a point that he could not request discharge. Nor did the private facility attempt to show that it was unable to provide adequate services. Rather, it appears that the voluntarily admitted patient was unable to pay for treatment at the private facility.

The majority correctly notes that the Code fails to address the situation where a nonstate hospital, either for clinical or other reasons, cannot continue to treat a voluntary patient already admitted to the facility. The majority concludes that, in such circumstances, the nonstate hospital has only two options: to discharge the patient altogether or to continue to provide inadequate care or care for which they will not be reimbursed. However, the majority wholly disregards an argument advanced by the respondent, *i.e.*, that the nonstate hospital has a third option: to give the patient the opportunity to apply for voluntary admission to a state facility.

I find nothing in the Code or in *Hays* which would prevent us from embracing such an option. A private facility which finds itself in a position where it cannot provide its voluntarily admitted patient with adequate treatment, for clinical or other reasons, could advise the voluntarily admitted patient that the private facility can no longer provide adequate care to the patient and assist the patient in applying for voluntary admission to a public facility or initiate such application on the patient's behalf, pursuant to section 3—400 of the Code (405 ILCS 5/3—400 (West 2000)). In this way, the voluntarily admitted patient could be transferred from the private facility to the public facility without losing his status as a voluntary patient. At the same time, the private facility would have the means to ensure that its voluntarily admitted patient receives needed services, while preserving the strong public policy concerns that animated the *Hays* and *Splett* decisions. Of course, if the voluntarily admitted patient refused to apply for voluntary admission to a public facility and if, in the professional opinion of the doctors at the private facility, the patient would be eligible for involuntary commitment, the patient could be so advised. See 405 ILCS 5/3—402 (West 2000).

Nearly 20 years ago, the *Hays* court, when confronted with circumstances nearly identical to those in the case at bar, ruled that it was a violation of a voluntarily admitted patient's statutory rights to institute involuntary commitment proceedings unless the voluntary patient submitted a written request for discharge. The *Hays* court arrived at this conclusion based on its interpretation of the Code, grounded in the belief that the Code evinced a legislative intent to make needed services available to mental health patients under the least restrictive means. Thus, where, as in the present case, a patient recognizes the need for inpatient care or hospitalization and voluntarily admits himself for such care, he should

not have to fear that his voluntary admission will be converted into an involuntary commitment unless he requests discharge or his mental condition has deteriorated to such a point that he is no longer capable of making an informed decision regarding his treatment. Since *Hays* issued, the legislature has not amended the Code and, accordingly, this court's interpretation of the statute should be considered part of the statute itself. *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387 (1998); *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983).

The majority's resolution is to allow the private facility to institute involuntary commitment proceedings against a voluntarily admitted patient even though he has not made a written request for discharge and there has been no significant change in the patient's condition. This resolution implicitly overrules *Hays* and subordinates the rights of the patient to those of the private facility.

Principals of *stare decisis* compel adherence to established precedent *absent compelling reasons for a departure*. In the case at bar, no compelling reasons have been provided for overturning *Hays*. Consequently, I would hold, consistent with *Hays*, that a private mental health facility may not institute involuntary commitment proceedings against a voluntarily admitted patient unless the patient has requested discharge or, because of a deterioration in the patient's condition, is unable to do so. Where, as here, a private facility is unable to continue to provide adequate care to a voluntarily admitted patient for clinical or other reasons, the facility may assist the patient in applying for voluntary admission to a public facility. In this way, the private facility ensures that the voluntarily admitted patient's treatment needs are appropriately met, while at the same time, preserves the patient's right to maintain his voluntary status.

It is disheartening to see this court show so little

regard for the doctrine of *stare decisis*, particularly when the prior decision of this court, *Hays*, has, through legislative acquiescence, become incorporated into the statute. Further, I am troubled because a moderate, workable alternative to overruling *Hays* was presented to this court by respondent. The majority, instead of embracing this alternative or explaining why it should not be adopted, simply chooses to ignore it. This is unfortunate. At a minimum, the respondent's argument deserves to be addressed by a majority of this court.

For the foregoing reasons, I would reverse the appellate court's judgment and find that here, as in *Hays*, the respondent's statutory rights were violated when the trial court found him to be a person subject to involuntary admission.

JUSTICE FREEMAN joins in this dissent.