*In re* LOUIS S., a Person Found Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Louis S., Respondent-Appellant).

Fourth District    No. 4—05—0085

Opinion filed October 31, 2005.

MYERSCOUGH, J., specially concurring in part and dissenting in part.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, and Cynthia Z. Tracy, of Guardianship & Advocacy Commission, of Peoria, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

On December 27, 2004, a petition for the involuntary admission of respondent, Louis S., was filed pursuant to section 3—701 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3—701 (West 2004)). After a January 21, 2005, hearing, the trial court ordered respondent hospitalized in a Department of Mental Health and Developmental Disabilities (Department) facility for 90 days.

Respondent appeals, contending (1) his procedural due-process rights were violated, (2) the State failed to prove by clear and convincing evidence that his involuntary admission was warranted, (3) the report required by section 3—810 of the Mental Health Code (405 ILCS 5/3—810 (West 2004)) (a) did not comply with statutory requirements and (b) was not considered by the trial court, and (4) the court's hospitalization order was manifestly erroneous. We reverse.

## I. BACKGROUND

Peggy S., respondent's wife and guardian, signed the December 27, 2004, petition and asserted respondent was mentally ill and due to his mental illness was reasonably expected to inflict serious physical harm upon himself or another in the near future. The same day the petition was filed, the trial court entered an order, requiring

respondent to submit to an examination at Memorial Medical Center (Memorial) that day. The court also entered an order for a peace officer to take respondent to Memorial for the examination. The circuit clerk entered a writ in compliance with the court's order. A peace officer did take respondent to Memorial, and respondent was examined on December 27, 2004.

On December 28, 2004, a medical certificate by Dr. Turner was filed that stated he or she believed respondent was subject to involuntary admission and in need of immediate hospitalization. On December 29, 2004, Dr. Richard B. Alexander's medical certificate that reached the same conclusion was filed. That same day, the trial court set a hearing on the petition for January 7, 2005.

On January 6, 2005, a notice of change in status was filed, indicating respondent had been transferred to Andrew McFarland Mental Health Center (McFarland) on January 5, 2005. On January 7, 2005, the trial court entered an order, setting respondent's hearing for January 14, 2005. The docket entry indicates the continuance was by agreement of the parties. That same day, Dr. Juan Medina filed a medical certificate. On January 11, 2005, Dr. Brad Hughes filed a medical certificate. On January 14, 2005, the trial court entered an order, setting respondent's hearing for January 21, 2005. The record does not indicate why the hearing was continued to January 21, 2005.

At the January 21, 2005, hearing, Dr. Hughes testified he had evaluated respondent on January 5 and 10, 2005. At the January 5 evaluation, respondent demonstrated paranoid and grandiose delusions, which are signs of mental illness. Some of the delusions Dr. Hughes noted were respondent indicated (1) he worked for the secret service and the Navy, (2) Peggy had her daughter raped, and (3) the McFarland staff had raped him during a previous admission. Besides evaluating respondent, Dr. Hughes examined Peggy's statements in her petition and respondent's past medical records from Memorial, a prior stay at McFarland from November 19 to December 9, 2004, and a hospitalization at St. John's Hospital. Based on all of the above information, Dr. Hughes diagnosed respondent with bipolar disorder. In his opinion, respondent posed a significant risk of harm to Peggy based on the level of paranoid delusions involving her. Dr. Hughes found respondent to be in need of treatment and formulated a plan for him. Dr. Hughes opined McFarland was the least-restrictive alternative for respondent and recommended a commitment period of 90 days.

During Dr. Hughes' testimony, the trial court admitted for dispositional purposes only a comprehensive physical, psychiatric, and social investigation report for respondent.

Peggy, respondent's wife of 24 years, testified that the day before she signed the December 27, 2004, petition, respondent informed her that he was having trouble controlling himself. When she asked him what that meant, he stated "murder." He then got up and got a paring knife and began walking slowly toward her. Peggy stated respondent did not have the knife pointed at her, but he was "like a zombi almost" with rage in his eyes. He did the same thing with a butcher knife and then held a fireplace poker at her. She called the police because she felt threatened by his statement.

Peggy further testified that respondent was paranoid against her. He accused her of having affairs, murdering his "girlfriend," and having her daughter raped. According to Peggy, respondent had stopped taking his medication because he did not believe he needed it anymore. If respondent was returned home, she would be fearful to return home. She described respondent as "unpredictable."

Respondent testified he did not threaten Peggy. He admitted he had kicked her in the past but that was because she was "scratching his eyes out."

After hearing all of the evidence, the trial court found (1) respondent suffered from a mental illness, (2) he was a risk of harm to Peggy, (3) he needed treatment, and (4) hospitalization was the least-restrictive alternative at that time. The court then committed respondent for 90 days. This appeal followed.

## II. ANALYSIS

### A. Mootness

■ The State asserts respondent's arguments are moot since the 90 days of commitment have expired. Respondent agrees the 90 days are over but asserts we should consider his arguments under an exception to the mootness doctrine.

Our supreme court has recognized an exception to the mootness doctrine when the case involves an event of short duration that is " 'capable of repetition, yet evading review.' " *In re Barbara H.*, 183 Ill. 2d 482, 491, 702 N.E.2d 555, 559 (1998), quoting *In re A Minor*, 127 Ill. 2d 247, 258, 537 N.E.2d 292, 296 (1989). To qualify for this exception, the challenged action must be (1) too short in its duration to be fully litigated prior to becoming moot and (2) the cause must demonstrate a reasonable expectation the same complaining party would be subjected to the same action again. *Barbara H.*, 183 Ill. 2d at 491, 702 N.E.2d at 559.

For an initial involuntary hospitalization order, the maximum commitment is 90 days, after which a new petition must be filed, a new hearing held, and a new order entered by the court. See 405 ILCS

5/3—813(a) (West 2004). Here, respondent's 90-day commitment order expired prior to our review. Further, respondent does have a long history of mental illness and a history of prior involuntary hospitalizations, and thus it is reasonable to expect the same action that was taken against him here might be undertaken again. Thus, we will address those issues that are susceptible to repetition. See *In re Maher*, 314 Ill. App. 3d 1088, 1096, 734 N.E.2d 95, 102 (2000) (where this court applied the probable-repetition exception in an involuntary hospitalization case).

## B. Statutory Violations

Respondent, through the Guardianship and Advocacy Commission (GAC), asserts his right to "due process" was violated because (1) he was not given 36 hours' notice before his initial psychiatric examination, (2) he was improperly transferred to McFarland, (3) his commitment hearing was not timely held, and (4) his guardian did not receive notice of his commitment hearing. We do not address the GAC's apparent position that any instance of statutory noncompliance constitutes a due-process violation. We note the GAC cites no authority for its position, and we limit our analysis to determining whether statutory violations requiring reversal occurred.

■ In involuntary commitment proceedings, strict compliance with statutory procedures is required since such proceedings affect important liberty interests. However, reversal is not required unless the respondent is in some way prejudiced by the failure to comply with statutory requirements. *In re Watts*, 250 Ill. App. 3d 723, 726, 620 N.E.2d 640, 642 (1993).

Citing *In re Luttrell*, 261 Ill. App. 3d 221, 229, 633 N.E.2d 74, 80 (1994), the State asserts respondent has forfeited these issues by failing to raise them in the trial court. However, this court is only addressing these issues under an exception to the mootness doctrine, and thus it would be illogical for us to now apply forfeiture and refuse to address respondent's claims. See *Smith v. Menold Construction, Inc.*, 348 Ill. App. 3d 1051, 1056, 811 N.E.2d 357, 362 (2004) (noting the rule of forfeiture is a limitation on the parties, not the reviewing court).

### 1. *36-Hour Notice*

■ Section 3—705 of the Mental Health Code (405 ILCS 5/3—705 (West 2004)) provides as follows:

> "At least 36 hours before the time of the examination fixed by the court, a copy of the petition, the order for examination, and a statement of rights as provided in [s]ection 3—205 shall be personally delivered to the person and shall be given personally or sent by

mail to his attorney and guardian, if any. If the respondent is admitted to a mental health facility for examination under [s]ection 3—704, such notices may be delivered at the time of service of the order for admission."

Section 3—704(a) of the Mental Health Code (405 ILCS 5/3—704(a) (West 2004)) allows a person to remain in his or her residence pending any examination. However, if the trial court determines it is necessary to complete the examination, the court may order the person admitted to a mental-health facility pending examination and may order a peace officer or another individual to transport the person there. 405 ILCS 5/3—704(a) (West 2004). Under section 3—704(a), no person may be detained for examination for more than 24 hours. 405 ILCS 5/3—704(a) (West 2004).

The State asserts section 3—705 does not apply because respondent was admitted to a mental-health facility pending his examination under section 3—704.

Here, the trial court ordered the clerk to issue a writ directing a peace officer to transport respondent to Memorial on December 27, 2004, for an examination. The order did not provide for respondent's admission or detention pending the examination. In compliance with the court's order, the clerk of the court prepared a writ that only directed the peace officer to transport respondent to Memorial for examination. Since the court did not order respondent admitted or detained for the examination at Memorial, respondent was entitled to notice of the examination at least 36 hours before the time of examination pursuant to section 3—705. In this case, respondent was received and examined at Memorial on December 27, 2004, which was the same day the examination order was entered.

Accordingly, we find the 36-hour-notice requirement of section 3—705 of the Mental Health Code (405 ILCS 5/3—705 (West 2004)) was not complied with. However, respondent does not assert how he was prejudiced by the noncompliance.

### 2. *Transfer to McFarland*

■ On January 6, 2005, a notice of change in status was filed, indicating respondent had been transferred to McFarland on January 5, 2005. The record does not indicate the reason for the transfer.

Sections 3—908 through 3—910 of the Mental Health Code (405 ILCS 5/3—908 through 3—910 (West 2004)) address the transfer between Department facilities of a person receiving treatment or habilitation. However, our supreme court has found a private institution may not invoke the above provisions of the Mental Health Code. See *In re Hays*, 102 Ill. 2d 314, 320, 465 N.E.2d 98, 101 (1984); see also *In re James E.*, 207 Ill. 2d 105, 112, 797 N.E.2d 622, 626 (2003).

Thus, it appears the only means by which respondent could have been transferred to McFarland was (1) in a dispositional order after he was found to be a person subject to involuntary commitment (see 405 ILCS 5/3—811 (West 2004)) or (2) by a discharge from Memorial and the institution of emergency involuntary commitment proceedings under article VI of the Mental Health Code (405 ILCS 5/3—600 through 3—611 (West 2004)) (see *James E.*, 207 Ill. 2d at 113, 797 N.E.2d at 626 (addressing the transfer of a person who was voluntarily admitted)). Since respondent's transfer was not by either of the above means, his transfer to McFarland was improper.

The State asserts respondent did not suffer any prejudice because he had agreed to a transfer to McFarland in a prior proceeding. Respondent responds his transfer was presumably prejudicial since it was to a more restrictive state facility and before his hearing. We need not address whether this issue prejudiced respondent since the next error was prejudicial.

### 3. *Hearing Date*

■ Under section 3—706 of the Mental Health Code (405 ILCS 5/3—706 (West 2004)), the trial court must hold a hearing on a petition for involuntary admission within five days, excluding Saturdays, Sundays, and holidays, after (1) its receipt of the second medical certificate or (2) the respondent's admission to a mental-health facility, whichever is earlier. Under section 3—800(b) of the Mental Health Code (405 ILCS 5/3—800(b) (West 2004)), the trial court may continue the hearing with the respondent continuing to be detained, but the continuance cannot "extend beyond 15 days except to the extent that continuances are requested by the respondent."

In this case, respondent was admitted to a mental-health facility after his December 27, 2004, examination. Thus, excluding the holiday and weekend from the five-day period, the trial court had to hold a hearing on or before January 4, 2005, pursuant to section 3—706. However, on December 29, 2004, the trial court set a hearing date of January 7, 2005. Thus, we find the trial court failed to comply with section 3—706, resulting in respondent's hearing being untimely. The fact respondent agreed to a continuance on January 7, 2005, does not render his hearing timely, as the statutory period had already passed at the time of the continuance.

The State argues respondent did not suffer any prejudice because, excluding the seven-day continuance that respondent agreed to, he was tried within 20 days of his admission as allowed by section 3—800(b). However, respondent was on his third day of unlawful detention when the continuance provisions of section 3—800(b) were

invoked. Thus, respondent was prejudiced by the noncompliance with section 3—706.

### 4. *Notice to Guardian*

■ Section 3—706 of the Mental Health Code (405 ILCS 5/3—706 (West 2004)) also requires that notice of the time and place of the hearing must be served upon the respondent's guardian, if the respondent has one. In this case, none of the three orders that set the hearing dates were served on Peggy, respondent's guardian. Thus, section 3—706 was again violated. However, we agree with the State that this violation would not warrant reversal since Peggy was present at the January 21, 2005, hearing. See *In re Splett*, 143 Ill. 2d 225, 231-32, 572 N.E.2d 883, 886 (1991) (finding reversal was not warranted despite lack of formal notice to the respondent since respondent's actual notice of the proceedings satisfied the purposes of section 3—706).

### C. Section 3—810 of the Mental Health Code

■ Respondent argues the State's report failed to comply with section 3—810 of the Mental Health Code (405 ILCS 5/3—810 (West 2004)) and the trial court erred by not considering the report before ordering respondent hospitalized for 90 days.

Section 3—810 provides as follows:

"Before disposition is determined, the facility director or such other person as the court may direct shall prepare a written report including information on the appropriateness and availability of alternative treatment settings ***. *** If the respondent is found subject to involuntary admission, the court shall consider the report in determining an appropriate disposition." 405 ILCS 5/3—810 (West 2004).

In this case, the State submitted a report, which indicated no alternative-treatment setting was appropriate for respondent at that time. This court has found that section 3—810 does not require a "detailed report" on treatment alternatives. See *In re Meek*, 131 Ill. App. 3d 742, 747, 476 N.E.2d 65, 69 (1985).

Moreover, the report in its entirety supported the conclusion no alterative-treatment setting was appropriate. The comprehensive psychiatric evaluation portion of the report indicated respondent (1) was noncompliant with his medication, (2) had threatened Peggy with a knife and a fireplace poker, and (3) was paranoid and delusional. Additionally, Peggy, with whom he lived, feared for her safety. The State's evidence at the hearing supported the above statements. Accordingly, we find the report sufficiently complied with section 3—810.

Even assuming the report was noncompliant, respondent cannot establish prejudice where he did not question the adequacy of the

report in the trial court and offered no suggestion as to a less-restrictive alternative than that made by the State both in the report and at the hearing. See *Meek*, 131 Ill. App. 3d at 747, 476 N.E.2d at 69 (applying the doctrine of waiver under similar circumstances).

Respondent also contends the trial court did not consider the report before disposition as required by section 3—810 of the Mental Health Code (405 ILCS 5/3—810 (West 2004)). Here, the record indicates the trial court admitted the report for dispositional purposes only at respondent's hearing, and the record on appeal contains the report. Moreover, respondent does not cite any pages of the record indicating the court failed to consider the report. Thus, we find respondent has failed to show the trial court did not consider the report mandated by section 3—810.

Last, we have examined the other issues raised by respondent and decline to address them, finding an exception to the mootness doctrine does not apply.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment. However, remand is not necessary since respondent's 90-day admission has expired.

Reversed.

STEIGMANN, J., concurs.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully specially concur in part and dissent in part. I strongly suspect documents and/or docket entries are missing from the record in this case but, at worst, technical procedural mistakes occurred due to a holiday weekend and perhaps agreements of defense counsel. Regardless, I concur in part with the majority, but I disagree with the majority's finding a violation of the 36-hour notice provision.

Perhaps the chief judge who signed the order was unfamiliar with the form and arguably checked the wrong provision. However, the order did provide for detention and examination. The order's very title is "Order for Detention, Examination, Diagnostic Evaluation." The court also ordered respondent be taken to Memorial by a police officer as set forth in the statute. Respondent must be admitted to the facility to be examined:

"(a) *** If, however, the court finds that it is necessary in order to complete the examination[,] the court may order that the person

be admitted to a mental health facility pending examination and may order a peace officer or other person to transport the person there. The examination shall be conducted at a local mental health facility or hospital or, if possible, in the respondent's own place of residence. No person may be detained for examination under this [s]ection for more than 24 hours." 405 ILCS 5/3—704(a) (West 2004).

Under any circumstances, respondent must be released unless the necessary findings are made.

"(a) *** The person shall be released upon completion of the examination unless the physician, qualified examiner[,] or clinical psychologist executes a certificate stating that the person is subject to involuntary admission and in need of immediate hospitalization to protect such person or others from physical harm. Upon admission under this [s]ection[,] treatment may be given pursuant to [s]ection 3—608." 405 ILCS 5/3—704(a) (West 2004).

To find a violation of this 36-hour notice is applying hypertechnical rules to the mental-health arena. Logically, how can a police officer transport and a physician examine without detaining the person pursuant to section 3—704?

The 36-hour notice provision is intended to apply to situations where respondent remains in his home prior to examination and appears voluntarily, by necessity a provision seldom utilized in commitment proceedings. Whether a respondent is admitted under section VI of the Code, emergency admission by certification, or under section VII, admission by court order, the respondent may be detained only 24 hours without examination. This is an emergency situation, which permits service of the notice of examination, the petition, and the statement of rights at the same time as the service of admission:

"If the respondent is admitted to a mental health facility for examination under [s]ection 3—704, such notices may be delivered at the time of service of the order for admission." 405 ILCS 5/3—705 (West 2004).

In fact, these notices of examination and admission are included on the same form in Sangamon County.

For these reasons, I would find no violation of the 36-hour provision, and I concur in part and dissent in part.