Filed 9/26/08          NO. 4-07-1033

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: ROBIN C., a Person Found          )     Appeal from
Subject to Involuntary Admission,        )     Circuit Court of
THE PEOPLE OF THE STATE OF ILLINOIS,     )     Sangamon County
          Petitioner-Appellee,           )     No. 07MH813
          v.                             )
ROBIN C.,                                )     Honorable
          Respondent-Appellant.          )     Esteban F. Sanchez,
                                         )     Judge Presiding.
_____

JUSTICE TURNER delivered the opinion of the court:

In November 2007, a petition was filed for the emergency involuntary admission of respondent, Robin C., alleging she was mentally ill, reasonably expected to inflict serious physical harm upon herself or others, and unable to provide for her basic physical needs. In December 2007, the trial court conducted a hearing and granted the petition. The court ordered respondent hospitalized for no more than 90 days.

On appeal, respondent argues (1) the petition for involuntary admission was defective and (2) the State failed to set forth clear and convincing evidence warranting involuntary admission. We reverse.

I. BACKGROUND

In November 2007, Springfield police officer J. Waller filed a petition for emergency involuntary admission as to respondent pursuant to section 3-601 of the Mental Health and

Developmental Disabilities Code (Code) (405 ILCS 5/3-601 (West 2006)).  In his factual basis, Waller stated respondent was found at a motel after police were called because she was "throwing rocks at the building while naked."  Respondent had "written all over herself" and had also written on her bathroom floor and walls.  Waller stated respondent "was making crazy statements," including that she would "blow up a school."  Waller stated respondent had no food in her apartment and, because of her state of mind, could not care for herself.  Respondent agreed to go to the hospital but only after taking off her clothes.

The petition alleged respondent was mentally ill, reasonably expected to inflict serious physical harm upon herself or another in the near future, unable to provide for her basic physical needs so as to guard herself from serious harm without the assistance of family or outside help, and in need of immediate hospitalization for the prevention of such harm.  Two medical certificates were also filed indicating respondent was subject to involuntary admission and in need of immediate hospitalization.

In December 2007, the trial court conducted a hearing on the petition.  Dr. Narasimhulu Sarma testified he has worked as a psychiatrist for 37 years.  Based on his examination of respondent, Dr. Sarma diagnosed her with chronic paranoid schizophrenia with symptoms of disorganization.  As to his belief that respondent suffers from a mental illness, Dr. Sarma found respon-

dent to be "quite psychotic" and "paranoid." Dr. Sarma stated prior to her admission respondent was found outside of a motel throwing rocks while naked. He indicated it was "very clear" that respondent would be a potential threat of harm to herself and others. Dr. Sarma also noted respondent threatened to blow up a school in the past. He believed respondent was in need of treatment and hospitalization. When asked if the formulated treatment plan was the least-restrictive alternative, Dr. Sarma stated it was "the best that we can do for her." He recommended a period of commitment not to exceed 90 days. On cross-examination, Dr. Sarma testified respondent had exhibited psychotic behavior following her admission but not any dangerous behaviors such as throwing objects or threatening people.

Respondent testified she was 44 years old and denied throwing rocks at a building while naked. She stated she would continue to take her medicine, which she believed had helped her. If discharged, respondent indicated she could stay at her aunt's house although she preferred to return to the motel.

On cross-examination, respondent testified to her actions prior to admission. She stated she was outside of a building when two men started throwing rocks. When the police arrived, respondent stated she took off her undergarments because she "didn't need them." She had also "written on" herself and described it as tracing a scar with a blue marker. She asked the

officers if she could wash it off so as not to give the appearance that she was having a "psychotic episode."

The trial court found respondent suffered from a mental illness and as a result of that illness was reasonably expected to inflict serious physical harm upon herself or another in the near future. The court ordered respondent hospitalized for no more than 90 days. This appeal followed.

## II. ANALYSIS

### A. Mootness

Initially, we note this case is moot. Section 3-813(a) of the Code (405 ILCS 5/3-813(a) (West 2006)) provides that an initial order for hospitalization shall not exceed 90 days. Here, the trial court's order granting the petition for involuntary admission was entered on December 7, 2007. Since the 90 days have passed and the court's order no longer has any force or effect, it is impossible for this court to grant any effectual relief to any party. However, as numerous courts have found involuntary-admission cases fall within recognized exceptions to the mootness doctrine, we will address this appeal on the merits. See In re Barbara H., 183 Ill. 2d 482, 492, 702 N.E.2d 555, 559-60 (1998) (capable-of-repetition exception); In re Alaka W., 379 Ill. App. 3d 251, 258, 884 N.E.2d 241, 246-47 (2008); In re Dorothy J.N., 373 Ill. App. 3d 332, 334, 869 N.E.2d 413, 415 (2007) (public-interest exception); In re Elizabeth McN., 367

- 4 -

Ill. App. 3d 786, 789, 855 N.E.2d 588, 590 (2006).

B. Petition for Involuntary Admission

Respondent argues the petition for involuntary admission was defective because it did not list the names and addresses of the respondent's family members or guardian or that a diligent effort was made to determine that information.

Section 3-601(b)(2) of the Code requires a petition for involuntary admission to include the following:

"The name and address of the spouse, parent, guardian, substitute decision maker, if any, and close relative, or if none, the name and address of any known friend of the respondent whom the petitioner has reason to believe may know or have any of the other names and addresses. If the petitioner is unable to supply any such names and addresses, the petitioner shall state that diligent inquiry was made to learn this information and specify the steps taken." 405 ILCS 5/3-601(b)(2) (West 2006).

As important liberty interests are involved in involuntary-commitment proceedings, strict compliance with statutory procedures is required. In re Louis S., 361 Ill. App. 3d 763, 768, 838 N.E.2d 218, 222 (2005). Our supreme court has held

procedural deviations from the Code do not require reversal of a commitment order if the defects could have and should have been objected to immediately, could have been easily cured if objected to immediately, and in the end made no difference anyway. In re Nau, 153 Ill. 2d 406, 419, 607 N.E.2d 134, 140 (1992); see also In re Tommy B., 372 Ill. App. 3d 677, 684, 867 N.E.2d 1212, 1219 (2007) (reversal for failure to strictly comply with section 3-601(b)(2) is not warranted unless the respondent suffered prejudice). Whether a respondent's procedural rights were violated is a question of law and our review is de novo. In re Shirley M., 368 Ill. App. 3d 1187, 1190, 860 N.E.2d 353, 356 (2006).

In the case sub judice, the petition for involuntary admission contains a section where the petitioner can list the names and addresses of those people mentioned in section 3-601(b)(2) or, if the names are not listed, space to describe the steps taken in making the diligent inquiry to identify and locate those individuals. The lines available for the names, addresses, and/or steps taken were left blank here. Thus, the petition was deficient as it failed to comply with the Code.

Although the petition was defective, we find respondent suffered no prejudice. Dr. Sarma testified at the hearing that he talked with respondent's mother the previous week, and she was concerned about respondent returning to the mother's home. Dr. Sarma stated respondent's mother wanted her to stay in a motel

because she was afraid of respondent. When asked if he had spoken with anyone else, Dr. Sarma stated respondent had an aunt, but she was not available.

Respondent did not object at the hearing to the deficiencies in the petition. Moreover, her testimony did not suggest any hardship or prejudice because of the State's failure to contact other responsible adults or otherwise comply with section 3-601(b)(2). The only people respondent mentioned were her mother and her aunt. While not listed in the petition, the evidence indicates Dr. Sarma contacted respondent's mother and attempted to contact her aunt. Respondent has not identified anyone else that could have or should have been listed. Thus, we find respondent suffered no prejudice.

We note this court addressed this same issue in Tommy B., where the section 3-601(b)(2) portion of the petition was also left blank. In pointing out the petition is reviewed by numerous individuals, including the petitioner, the facility director, the circuit clerk, the attorney for the State, the respondent's attorney, and the trial judge, this court noted "not one person noticed the petition is missing required information." Tommy B., 372 Ill. App. 3d at 685, 867 N.E.2d at 1220. If discovered at the hearing, we found these deficiencies could be speedily addressed to "avoid needless appeals" and "save countless resources." Tommy B., 372 Ill. App. 3d at 685, 867 N.E.2d

- 7 -

at 1220; see also Dorothy J.N., 373 Ill. App. 3d at 338, 869 N.E.2d at 417 (Steigmann, J., specially concurring) (noting the recent increase in involuntary-admission cases on appeal wherein "the same issues tend to arise in case after case").  The same can be said here.  Procedural deficiencies and mistakes in mental-health cases "suggest a lack of attention to process" (In re Lillie M., 375 Ill. App. 3d 852, 860, 875 N.E.2d 157, 164 (2007) (Knecht, J., dissenting)), and we reiterate the need for greater attention to detail in complying with the statutory requirements in these cases.

### C. Involuntary Commitment

Respondent argues the State failed to present clear and convincing evidence warranting her involuntary admission.  We agree.

A trial court's decision on involuntary admission is accorded great deference on appeal and will not be overturned unless it is against the manifest weight of the evidence.  In re Hannah E., 376 Ill. App. 3d 648, 661, 877 N.E.2d 63, 75 (2007).  The court's judgment will be considered against the manifest weight of evidence "'only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.'"  Elizabeth McN., 367 Ill. App. 3d at 789, 855 N.E.2d at 590, quoting In re John R., 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

"[I]nvoluntary admission procedures implicate substantial liberty interests which must be balanced against the State's dual interests in protecting society from dangerous mentally ill persons and protecting those who are unable to care for themselves." In re Rovelstad, 281 Ill. App. 3d 956, 967, 667 N.E.2d 720, 726 (1996). A person is subject to involuntary admission under the Code if he or she has a mental illness and because of that illness is "reasonably expected to inflict serious physical harm upon himself or herself or another in the near future." 405 ILCS 5/1-119(1) (West 2006).

"Proof of mental illness alone is not sufficient to support involuntary admission." In re Nancy A., 344 Ill. App. 3d 540, 555, 801 N.E.2d 565, 580 (2003). "A person may not be confined against his will merely because he is mentally ill if he is dangerous to no one and can live safely in freedom." In re O.C., 338 Ill. App. 3d 292, 296, 788 N.E.2d 1163, 1167 (2003). Instead, to satisfy its burden of proof, "the State must submit 'explicit medical testimony' that the respondent is reasonably expected to be a serious danger to himself or others as a result of his mental illness." In re Bert W., 313 Ill. App. 3d 788, 794, 730 N.E.2d 591, 597 (2000). However, the trial court is not required to wait until the respondent actually harms himself or another before ordering hospitalization. Tommy B., 372 Ill. App. 3d at 687, 867 N.E.2d at 1221.

- 9 -

In this case, Dr. Sarma testified respondent suffered from chronic paranoid schizophrenia with symptoms of disorganization and paranoia. She had also been hospitalized "several times in the past." We find the State presented clear and convincing evidence of respondent's mental illness. We note respondent does not contest this issue on appeal.

Despite our finding as to mental illness, we find the State failed to prove by clear and convincing evidence that respondent would seriously harm herself or others. Dr. Sarma testified respondent posed "a potential threat of harm to herself or others." However, his opinion of the "potential threat of harm" was based on the factual basis of the petition and the hearsay therein, that respondent was naked while throwing stones at a building. The State asked him if her throwing stones placed someone in expectation of being harmed, and Dr. Sarma responded yes. The evidence does not indicate who was placed in harm's way. Dr. Sarma noted respondent threatened to blow up a school "in the past I believe." He also stated respondent's mother told him she did not want to bring respondent back home because she was afraid of respondent. No witnesses offered direct testimony that respondent had engaged in these or other harmful behaviors.

Dr. Sarma's firsthand knowledge of respondent's condition came by way of examination and contradicted the hearsay allegations he relied upon. He stated she exhibited psychotic

behaviors while she was hospitalized.  However, she had not exhibited any dangerous behaviors like throwing things, had not run around naked, or threatened anyone.  He also stated she was taking her medications, although he believed she was not yet responding.

Respondent denied being naked and throwing rocks.  She felt she had improved and no longer needed to remain hospitalized.  She also believed her medications were helping and said she would continue to take them.

The trial court agreed with respondent that it appeared her medications were working.  The court stated she appeared to be lucid, which the court found contradicted Dr. Sarma's testimony that she was "quite psychotic" based on his examination prior to the hearing.  The court also found respondent understood her mental illness and was "able to control herself quite well." However, because "she was outside reportedly naked in the cold winter days of Springfield in November and because that conduct placed her or others, at least her, in harm," the court concluded she was reasonably expected to inflict serious physical harm upon herself or another in the near future.

In this case, no direct or substantive evidence showed respondent had engaged in dangerous or violent acts that would place her or others in jeopardy of serious physical harm in the near future.  No evidence showed respondent harmed or threatened

- 11 -

to harm her mother or anybody at the motel. It may be that respondent could reasonably have been expected to inflict serious physical harm upon herself or others, but the testimony from the State's witness failed to establish that danger. Instead, the expert's opinion was based on hearsay, and his belief that respondent was a "potential" threat of harm was weakened by his testimony that she had not shown any threatening behaviors while she was hospitalized and on her medication. While the State proved respondent suffered from a mental illness, the evidence failed to show she was reasonably expected to inflict serious physical harm upon herself or others in the near future because of her mental illness. Thus, the trial court erred in granting the petition for involuntary admission. Because of our resolution of this issue, we need not consider respondent's remaining allegation of error.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

McCULLOUGH, J., concurs.

STEIGMANN, J., dissents.

JUSTICE STEIGMANN, dissenting:

Because I conclude that the trial court heard sufficient evidence to justify its findings, I respectfully dissent.