NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250435-U

NO. 4-25-0435

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* SCOTT A., a Person Found Subject to Involuntary Admission | ) ) ) | Appeal from the Circuit Court of Adams County |
| (The People of the State of Illinois, Petitioner-Appellee, | ) ) | No. 25MH73 |
| v. | ) | Honorable |
| Scott A., Respondent-Appellant). | ) ) | John C. Wooleyhan, Judge Presiding. |

JUSTICE GRISHOW delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court reversed the trial court's order involuntarily admitting respondent to a mental health facility, finding the State did not comply with the procedures of the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2024)). The State failed to file a written predispositional report or provide some of the necessary information. In addition, the petition was deficient for failing to identify respondent's family or friends or describe a diligent effort to do so.

¶ 2     The State petitioned to have respondent, Scott A., involuntarily admitted to a mental health facility after a suicide attempt. The trial court granted the petition, ordering respondent involuntarily admitted to a mental health facility for up to 90 days. Respondent appealed, arguing he was admitted in violation of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2024)) because (1) the petition was deficient under the Mental Health Code in that it failed to identify respondent's family or the steps taken in making a diligent inquiry to locate his family (*id.* § 3-601(b)(2)),

(2) the second examination required under the Mental Health Code was untimely (*id.* § 3-610), and (3) the State failed to provide the required written report prior to the court's disposition (*id.* § 3-810). We agree the petition was deficient and the State failed to provide a predispositional report, so we reverse.

¶ 3                                    I. BACKGROUND

¶ 4        On April 13, 2025, respondent attempted to take his own life by means of an overdose of medication. He was transported to Blessing Hospital in Quincy, Illinois, and admitted to the intensive care unit (ICU) for medical stabilization. On that date, a nurse at Blessing Hospital completed a petition for involuntary admission under the Mental Health Code, asserting respondent was in need of immediate hospitalization to prevent him from harming himself. The petition, signed at 7:15 a.m. on April 13, 2025, further alleged respondent's family was "unknown due to patient not able to provide information." Attached to the petition was a statement signed by the same nurse, stating she provided respondent with a copy of the petition and a statement of his rights under the Mental Health Code. Dr. Alborz Javadzadeh signed an inpatient certificate that was also attached to the petition. Dr. Javadzadeh certified he examined respondent at Blessing Hospital on April 14, 2025, at 7 a.m., and he believed respondent should be subject to involuntary inpatient admission and immediate hospitalization. The petition, with the attachments, was filed with the clerk of the circuit court of Adams County, Illinois, on April 14, 2025, at 10:26 a.m. On April 15, 2025, at 2:37 p.m., a second inpatient certificate, signed by Dr. Christopher Trammell, was filed with the court. Dr. Trammell certified he examined respondent on April 15, 2025, at 9 a.m., at Blessing Hospital, and he believed respondent should be subject to involuntary inpatient admission and immediate hospitalization.

¶ 5        A hearing was held on the petition at Blessing Hospital on April 21, 2025. At the

beginning of the hearing, respondent's counsel made an oral motion to strike the petition on the basis that the State failed to submit a written predispositional report. The State acknowledged there was no predispositional report, but it contended the necessary information was contained in the medical records provided. The trial court reserved ruling on the motion.

¶ 6        Dr. Trammell testified he was a psychiatrist at Blessing Hospital, where respondent was admitted on April 13, 2025, after an overdose. Respondent was initially admitted to the ICU and, after medical stabilization, was admitted to the adult psychiatry unit on April 14, 2025. Dr. Trammell had daily contact with respondent in the hospital and diagnosed respondent with major depressive disorder. Dr. Trammell was concerned because respondent had multiple recent suicide attempts by overdose. After his prior suicide attempts, respondent was released from the hospital with instructions to continue treatment with medication and outpatient therapy. However, after the current suicide attempt, his third attempt in six weeks, Dr. Trammell recommended inpatient hospitalization at Blessing Hospital or a state mental health facility. Dr. Trammell felt inpatient hospitalization was the least restrictive setting. Dr. Trammell considered possible less restrictive alternatives, such as outpatient care and partial hospitalization, but rejected those options due to respondent's recent history of suicide attempts. In addition, Dr. Trammell believed partial hospitalization was logistically challenging for respondent.

¶ 7        Given his multiple suicide attempts, Dr. Trammell believed respondent was a high risk for suicide in the future. As treatment to mitigate that risk, Dr. Trammell recommended the continued evaluation of respondent's medications and participation in individual and group therapy. The goal of treatment would be to reduce respondent's suicide risk, improve respondent's functioning, and improve respondent's quality of life. As for a projected timetable to meet the treatment goals, Dr. Trammell stated it was hard to be specific, but he believed it

would take respondent a few weeks to meet the goal of leaving the hospital safely. Respondent's medical records for the April 2025 hospitalization were admitted into evidence without objection.

¶ 8    The trial court found the petition proven by clear and convincing evidence and granted the petition. As for the failure to provide a written predispositional report, the court concluded the State had sufficiently complied with the statutory requirement with the admitted hospital records and testimony from Dr. Trammell. The court entered an order for involuntary commitment on April 21, 2025, committing respondent to Blessing Hospital, or another Illinois Department of Human Services facility, for up to 90 days.

¶ 9    This appeal followed.

¶ 10                                    II. ANALYSIS

¶ 11    Respondent appeals the trial court's order for involuntary admission. Respondent argues the order of involuntary admission should be reversed because the (1) the petition was deficient under the Mental Health Code in that it failed to identify respondent's family or the steps taken in making a diligent inquiry to locate his family, (2) the second examination required under the Mental Health Code was untimely, and (3) the State failed to provide the required written report prior to disposition.

¶ 12    Before addressing the merits of respondent's appeal, we must first determine if appellate review is appropriate. The order for involuntary admission was entered on April 21, 2025, committing respondent for up to 90 days. The parties agree the 90 days have expired, so it is impossible for this court to grant relief from that order. Accordingly, this appeal is moot. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) ("As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected

- 4 -

regardless of how those issues are decided."). Respondent argues we may review the case under an exception to the mootness doctrine; specifically, respondent argues the mootness exception for issues capable of repetition yet evading review is applicable. The State agrees.

¶ 13　　　　Whether an appeal falls within an exception to mootness "must be determined on a case-by-case basis, considering each exception in light of the relevant facts and legal claims raised in the appeal." *In re Amanda H.*, 2017 IL App (3d) 150164, ¶ 25. Relevant here, the mootness exception for issues capable of repetition yet evading review may be applicable when the complaining party demonstrates (1) the duration of the challenged action is too short to be fully litigated before its completion and (2) "a reasonable expectation that the same complaining party will be subject to the same action again." *In re Benny M.*, 2017 IL 120133, ¶¶ 19-20. The first element is met here because respondent could not fully litigate his challenges to the petition and involuntary commitment order within 90 days. See *In re Julie M.*, 2021 IL 125768, ¶ 22. The record indicates the second element is also present. Respondent resides in the area and has a history of prior suicide attempts and inpatient admissions at the same hospital. Also, the issues before the court, which involve the proper application of the Mental Health Code, are likely to reoccur in future involuntary commitment proceedings. See *In re Anne W.*, 2025 IL App (4th) 241257, ¶ 19. Thus, we conclude the capable of repetition yet evading review exception to mootness applies to all three of respondent's claims, and we will address the merits of respondent's appeal.

¶ 14　　　　Chapter III of the Mental Health Code details the procedures necessary for admissions under its provisions and provides "[a] person may be admitted as an inpatient to a mental health facility for treatment of mental illness only as provided in this Chapter." 405 ILCS 5/3-200(a) (West 2024). Applicable here, article VI of chapter III provides the procedures

necessary for the involuntary admission of a respondent in an emergency situation where he is in need of immediate hospitalization to protect himself or others. *Id.* § 3-600 ("A person 18 years of age or older who is subject to involuntary admission on an inpatient basis and in need of immediate hospitalization may be admitted to a mental health facility pursuant to this Article."). To involuntarily admit a person to a mental health facility pursuant to this article, a petition asserting the person is subject to involuntary admission must be presented to the facility director. *Id.* § 3-601(a). The petition must be accompanied by a certificate completed by a qualified examiner, which states the person is subject to involuntary admission. *Id.* § 3-602. "As soon as possible but not later than 24 hours, excluding Saturdays, Sundays and holidays, after admission of a respondent pursuant to this Article, the respondent shall be personally examined by a psychiatrist." *Id.* § 3-610.

¶ 15    Within 24 hours of admission under article VI, the facility director must file with the clerk of the circuit court (1) the petition, (2) the first certificate, and (3) proof of service of the petition and a statement of rights on the respondent. *Id.* § 3-611; *Julie M.*, 2021 IL 125768, ¶ 33. After the examination by a psychiatrist, and upon completion of a second certificate by the psychiatrist, the second certificate should be promptly filed with the court, along with the other materials previously filed. 405 ILCS 5/3-611 (West 2024). Once the petition and two certificates have been filed in the court, the matter proceeds to a hearing pursuant to article VIII (*id.* ch. III, art. VIII). *Julie M.*, 2021 IL 125768, ¶ 34. At the hearing, the court will make the determination whether the respondent is a person "subject to involuntary admission on an inpatient basis." 405 ILCS 5/3-811 (West 2024). If so, the court may issue a commitment order not to exceed 90 days. *Id.* §§ 3-811(a), 813(a).

¶ 16    " 'Because the Code protects liberty interests, strict compliance with statutory

procedures is required.' " *Anne W.*, 2025 IL App (4th) 241257, ¶ 22 (quoting *Amanda H.*, 2017 IL App (3d) 150164, ¶ 34). As respondent's counsel objected to the lack of a written predispositional report, we will begin our analysis with that preserved issue. Whether a respondent's procedural rights were violated is a question of law, which we review *de novo*. *In re Robin C.*, 385 Ill. App. 3d 523, 527 (2008).

¶ 17                                  A. Predispositional Report

¶ 18            Respondent argues the trial court's order of involuntary admission should be reversed because the State failed to provide a written predispositional report as required by section 3-810 of the Mental Health Code (405 ILCS 5/3-810 (West 2024)). Respondent contends his medical records, which were submitted as an exhibit at the hearing, did not sufficiently comply with the Mental Health Code's mandate because they did not include a projected timeline for treatment or a discussion of less restrictive alternatives. The State agrees that it did not comply with section 3-810 of the Mental Health Code and respondent's medical records were insufficient as a substitute for the written predispositional report.

¶ 19            Section 3-810 of the Mental Health Code provides:

           "Before disposition is determined, the facility director or such other person as the
           court may direct shall prepare a written report including information on the
           appropriateness and availability of alternative treatment settings, a social
           investigation of the respondent, a preliminary treatment plan, and any other
           information which the court may order. The treatment plan shall describe the
           respondent's problems and needs, the treatment goals, the proposed treatment
           methods, and a projected timetable for their attainment. If the respondent is found
           subject to involuntary admission on an inpatient or outpatient basis, the court shall

- 7 -

consider the report in determining an appropriate disposition." *Id.*

¶ 20    The purpose of section 3-810 of the Mental Health Code "is to provide trial judges certain information necessary for determining whether an individual is subject to involuntary admission to a mental health facility." *In re Robinson*, 151 Ill. 2d 126, 133 (1992). As noted above, important liberty interests are involved in involuntary commitment proceedings, so strict compliance with statutory procedures is required. *Robin C.*, 385 Ill. App. 3d at 527. As strict compliance is required and the State admittedly failed to strictly comply with section 3-810 of the Mental Health Code, the order of involuntary admission cannot stand. See *In re E.L.*, 316 Ill. App. 3d 598, 607 (2000) (holding strict compliance with section 3-810 of the Mental Health Code may only be excused when the respondent fails to object); see also *Robinson*, 151 Ill. 2d at 130-31 (holding strict compliance with section 3-810 of the Mental Health Code is required only when the legislative intent cannot otherwise be achieved when counsel fails to object but noting "[t]he question whether a respondent may compel strict compliance with these provisions by objection at an involuntary admission hearing is not before us").

¶ 21    Even if strict compliance was not required, we conclude the medical records and testimony at the hearing did not cure the failure to comply with section 3-810 of the Mental Health Code. As acknowledged by respondent and the State, the information presented at the hearing failed to provide a projected timeline for respondent's treatment or a discussion of less restrictive alternatives. When asked by the court for a projected timeline for treatment, Dr. Trammel testified that it was hard to be specific. Respondent would have to be evaluated day by day, and Dr. Trammel's "best guess" was a couple of weeks. As for less restrictive alternatives, Dr. Trammel testified outpatient treatment had been unsuccessful, in light of respondent's recent suicide attempts, but his reasoning for rejecting partial hospitalization as a less restrictive

alternative was that it was generally difficult to make work. Dr. Trammel's testimony with respect to partial hospitalization was insufficient because he did not state that it had been specifically considered for respondent and why it had been rejected as an option for respondent. See *Amanda H.*, 2017 IL App (3d) 150164, ¶ 44 (stating cursory testimony is insufficient to satisfy the requirements of section 3-810 of the Mental Health Code). Thus, we reverse the trial court's order granting the State's petition for involuntary admission.

¶ 22        As concluded above in our discussion of mootness, the issues here involve the proper application of the Mental Health Code and are likely to reoccur in future involuntary commitment proceedings. Thus, while we have already determined that respondent's involuntary admission was fatally defective, we will address the remaining issues raised by respondent.

¶ 23                              B. Sufficiency of the Petition

¶ 24        Respondent also contends the petition for involuntary admission was deficient under section 3-601(b)(2) of the Mental Health Code (405 ILCS 5/3-601(b)(2) (West 2024)) because it failed to state the names and addresses of family members or close friends of respondent or, alternatively, describe what steps were taken to discover the identity of such individuals. Respondent acknowledges trial counsel failed to raise this issue at the hearing but argues we should excuse the forfeiture and reverse the order for involuntary admission. The State concedes the petition failed to include what steps were taken to make a diligent inquiry to identify and locate respondent's family members or close friends and agrees the order for involuntary admission should be reversed on this basis.

¶ 25        As noted, respondent's trial counsel did not object to the sufficiency of the petition at the trial level. "[P]rocedural deviations from the [Mental Health] Code do not require reversal of a commitment order if the defects could have and should have been objected to

- 9 -

immediately, could have been easily cured if objected to immediately, and in the end made no difference anyway." *Robin C.*, 385 Ill. App. 3d at 527.

¶ 26   Section 3-601(b)(2) of the Mental Health Code provides:

"The petition shall include all of the following:

***

The name and address of the spouse, parent, guardian, substitute decision maker, if any, and close relative, or if none, the name and address of any known friend of the respondent whom the petitioner has reason to believe may know or have any of the other names and addresses. If the petitioner is unable to supply any such names and addresses, the petitioner shall state that diligent inquiry was made to learn this information and specify the steps taken." 405 ILCS 5/3-601(b)(2) (West 2024).

¶ 27   "[T]he purpose of the statutory requirement is to ensure that the petitioner makes every effort to contact a responsible family member or friend." *In re Joseph M.*, 405 Ill. App. 3d 1167, 1180 (2010). Family members can provide valuable assistance; not only can they be helpful in determining the availability of less restrictive alternatives to involuntary commitment, but they may also provide background information or hire legal counsel to assist the respondent. See *id.* at 1181-82. Here, the petition states the family or close friends were "unknown due to patient not able to provide information." As respondent contends, and the State agrees, information regarding respondent's family was contained within his medical records from his prior hospitalizations. The records introduced as evidence at the hearing indicate respondent has an ex-wife, a brother, and several adult children, as well as friends who are close enough to occasionally provide housing to respondent. In fact, the exhibit admitted at the hearing contains a

name and telephone number for a daughter. The petition, however, fails to identify any family or friends and fails to disclose any steps taken to identify and locate them. Thus, the petition was deficient because it failed to comply with the Mental Health Code. See *In re Lance H.*, 402 Ill. App. 3d 382, 388 (2010) (reversing order for involuntary admission because the petition, which stated "N/A" for family or friends, was insufficient under the Mental Health Code).

¶ 28    In addition, the record provides no basis to conclude that any of respondent's family or friends were contacted or that a diligent inquiry was made to discover them. *Cf. Robin C.*, 385 Ill. App. 3d at 527 (holding the respondent suffered no prejudice from the deficient petition because there was testimony at the hearing that the respondent's mother had been contacted and there was an attempt to reach her aunt). As the petition does not contain the information required by the Mental Health Code and respondent was prejudiced by the defect, the order for involuntary commitment could also be reversed on this basis.

¶ 29    C. Timeliness of Second Examination

¶ 30    Lastly, respondent contends the record indicates more than 24 hours passed between his involuntary admission under the Mental Health Code and the statutorily required second examination. He acknowledges his counsel did not object to or challenge the timeliness of the second examination at trial but argues he was prejudiced by that failure and entitled to reversal of the involuntary admission order. The State contends there was no error, so no plain error.

¶ 31    Admissions under article VI of chapter III of the Mental Health Code (405 ILCS 5/ch. III, art. VI (West 2024)) occur prior to any specific finding by a court that the respondent meets the requirements for involuntary admission and prior to any commitment order. *Julie M.*, 2021 IL 125768, ¶ 30. A person is considered admitted under article VI when the petition and the

- 11 -

certificate are presented to the facility director of the mental health facility. *Anne W.*, 2025 IL App (4th) 241257, ¶ 37. Here, the record indicates the petition for involuntary admission was signed at 7:15 a.m. on April 13, 2025. The first inpatient certificate was signed on April 14, 2025, indicating the examination took place at 7 a.m. the same day. Those documents were filed with the clerk of the circuit court on April 14, 2025, at 10:26 a.m. As such, while there is no indication in the record when the petition and certificate were presented to the facility director, respondent was admitted under the Mental Health Code at some point between 7 a.m. and 10:26 a.m. on April 14, 2025. The second certificate was filed with the clerk of the court on April 15, 2025, at 2:37 p.m., stating the second examination took place on April 15, 2025, at 9 a.m. As the party claiming error, it was respondent's burden to show to show a lack of compliance with the Mental Health Code. See *In re Linda B.*, 2017 IL 119392, ¶ 43. Here, that would be a showing that the petition and the first certificate were presented to the facility director prior to 9 a.m. on April 14, 2025. As respondent failed to sustain his burden of showing the second examination was untimely under the Mental Health Code, this would not be grounds for reversal.

¶ 32        In closing, we find it necessary to again emphasize the importance of adhering to the requirements of the Mental Health Code. See *Anne W.*, 2025 IL App (4th) 241257, ¶¶ 55-56 (emphasizing the appellate court's disapproval of how the case was handled and citing other appellate court opinions and orders highlighting the lack of adherence to the requirements of the Mental Health Code). "Procedural deficiencies and mistakes in mental-health cases 'suggest a lack of attention to process' [citation], and we reiterate the need for greater attention to detail in complying with the statutory requirements in these cases." *Robin C.*, 385 Ill. App. 3d at 528 (quoting *In re Lillie M.*, 375 Ill. App. 3d 852, 860 (2007) (Knecht, J., dissenting)).

¶ 33                                    III. CONCLUSION

¶ 34            For the reasons stated, we reverse the trial court's judgment.

¶ 35            Reversed.